CHARLOTTE J. L'ENGLE, *Appellant,* v. WALTER OVERSTREET, *et al., Appellees.*

1. Whether the specific performance of a contract for the conveyance of real estate will be enforced by judicial procedure is determined by the application of the established principles of equity designed for administering justice that are appro-

priate to the facts and circumstances of the particular case. Primarily the contract should be definite and legally binding and its enforcement be practical and equitable.

2. Where in a contract to convey lands it is expressly covenanted by an indenture that time shall be of the essence of the contract, the complainant to have specific performance must perform or offer to perform within the time specified, unless his delay is sufficiently excused or waived.

3. Non performance of a contract for the conveyance of land within the specified time may be excused so as to authorize specific performance when the defendant caused the delay, as by evading tender or performance, or by causing the complainant to be misled or to make a mistake as to his rights; or the delay may be waived expressly or impliedly by the agreement or conduct of the defendant.

4. Where a party has paid no part of the purchase price, and loses a right to purchase lands within a stated period by the mere expiration of the time definitely limited by an indenture in which time is expressly made of the essence of the contract, such loss is not a forfeiture requiring action by the opposite party and against which equity will give relief.

5. Improvements afford no independent ground for specific performance unless they are both valuable and permanent and are warranted by the contract.

6. In construing a contract the leading object is to ascertain and effectuate the intention of the parties. To ascertain the real intent, the language used, the subject-matter, and the purpose designed may be considered. When the purpose designed to be accomplished is ascertained, the meaning and effect given to the language used should comport with the intended purpose.

7. While ambiguous language is to be construed against the person using it, yet it should be given an effect that will be in accord with the object in view.

8. The real intention, as disclosed by a fair consideration of all parts of a contract, should control the meaning given to mere words or particular provisions, when they have reference to the main purpose.

8. The contract in this case held to be a lease of land for a specific term with the privilege of paying for and procuring a conveyance of the land at any time within the period of the lease; and as the promise of the lessees to pay the purchase price is by other provisions of the contract so qualified as to the time and conditions of its payment that the promise cannot be enforced after the expiration of the lease period, the mere tender of the purchase price after the expiration of the lease period, where no controlling equity is shown, does not entitle the lessees to a specific enforcement of the contract that has expired.

This case was decided by the court En Banc.

Appeal from the Circuit Court for Duval County.

STATEMENT.

This appeal is taken by the defendant below from an order overruling a demurrer to a bill for specific performance brought by Walter Overstreet, P. A. Cunningham and Arthur J. Cunningham.

The bill of complaint is as follows:

"That on March 24th, 1905, the defendant Charlotte J. L'Engle, by Porcher L'Engle, her attorney in fact, executed and delivered to the plaintiffs Walter Overstreet and P. A. Cunningham her deed, which with the addenta hereinafter referred to follows:

"Law Offices,
Porcher L'Engle,
Jacksonville, Florida.

This agreement, made this 24th day of March, nineteen hundred five, between Charlotte J. L'Engle, lessor of the

first part, and Walter Overstreet and P. A. Cunningham, lessee of the second part, both. of Duval county, Florida.

Witnesseth, That in consideration of forty dollars to me paid by the said party of the second part, I do hereby lease to the said party of the second part that certain tract or parcel of land in the county and State aforesaid;

Beginning at a point on the north side of the Jacksonville and Alligator Plank Road (so called) being the S. W. corner of lands formerly owned by A. J. Kingston; thence north 10 degrees, west 990 feet to a corner on the south side of a public road 25 feet wide; thence westwardly parallel to said Plank Road to the northwest boundary line of the Haddock Estate tract, or the western Isaach Hendrick's Grant; thence south 48 degrees west, along said boundary line to the Three Mile Branch; thence down the branch on the east side thereof to the Plank Road; thence eastwardly along the Plank Road to point of beginning, containing 19¼ acres, more or less.

To Have and To Hold the land described to the party of the second part, and to their legal representatives and assigns, for five (5) years from the date hereof, provided they or those holding through them shall pay me or to my legal representatives or assigns, without demand, forty ($40.00) dollars four times in each year, on the first days of January, April, July, and October, in advance and shall pay all taxes and assessments on said land and keep the buildings thereon insured for their insurable value, loss payable to lessor, subject to eviction and to abrogation of this agreement, at will of lessor after thirty days of default, of either rent, taxes, assessments or insurance premiums. Time is of the essence of this contract.

And I hereby covenant for myself and for my heirs and assigns, upon the faithful performance of the above conditions by the party of the second part, or by those holding

through them, to execute and deliver to them at any time within the period limited above, a good title in fee to the land described herein, upon payment to me or to my legal representatives of two thousand ($2,000.00) dollars.

There being no lease in arrears.

And the said lessee for themselves and their legal representatives and assigns promises to pay said principal sum mentioned above and the said lease or rent herein stipulated on the dates named and all taxes and assessments, and if default be made therein for thirty days to surrender possession of said property to said lessor.

In Witness Whereof, the said lessor and lessee have hereunto set their hands and seals in duplicate this 24th day of March, A. D. 1905.

|  |  |
|---|---|
| Charlotte J. L'Engle, | (Seal) |
| By P. L'Engle, | (Seal) |
| Atty in Fact. | |
| P. A. Cunningham, | (Seal) |
| Walter Overstreet, | (Seal) |

Signed, sealed and delivered before us—
Frank E. Jennings, W. C. Fehrenback.
As to Overstreet & Cunningham—
J. C. Prosser. C. F. Romedy.

Lease paid to June 30th, 1905.  P. L'E."

That under and pursuant to the deed on or about March 24, 1905, the plaintiffs Walter Overstreet and P. A. Cunningham paid to the defendant $40.00, for the first installment which was accepted as and for and in payment of all moneys to be paid up to and inclusive of June 30th, 1905, and the said Porcher L'Engle, did then and there endorse at the foot of said instrument the words and figures following: "Lease paid to June 30th, 1905, P. L'E.;"

that on or about March 24th, 1905, acting under the instrument, the plaintiffs Walter Overstreet and P. A. Cunningham entered into possession of the land and soon thereafter did erect a substantial fence enclosing the land and otherwise improved the same; that from and after June 30th, 1905, on each of the several quarter days mentioned in the deed, the defendant through her attorney received such payments to and inclusive of January 1st, 1910; that on the 30th and 31st days of March and on the 1st day of April, A. D. 1910, plaintiffs had made all payments for taxes and assessments on said lands, and otherwise in all respects performed in their part the said instrument, save as they were prevented from performing same by defendant as hereinafter set forth, and on said days all conditions were fulfilled and all things happened and all times elapsed necessary to entitle these plaintiffs, or the plaintiffs Walter Overstreet and P. A. Cunningham to a good title in fee to the land described in said deed, save as performance on the part of these plaintiffs, or of the said plaintiffs Walter Overstreet and P. A. Cunningham was excused by the conduct of the defendant hereinafter set forth. That is to say, on to-wit, the 30th day of March, 1910, plaintiffs sought the said Porcher L'Engle at his residence and at his customary place of business in the city of Jacksonville, Duval county, Florida, for the purpose of paying to said Porcher L'Engle the sum of two thousand dollars in said deed mentioned and were informed that said L'Engle was absent from his home and from the city of Jacksonville. Whereupon, the said plaintiffs deposited said sum of two thousand dollars in the Florida National Bank, a National Bank and United States Depository then and there existing and doing business in the said city of Jacksonville, with instructions to said Bank to deliver the same

to said L'Engle on the delivery to it of a warranty deed to these plaintiffs of the land mentioned in said instrument hereinbefore set forth, and on the same day sent to the said L'Engle by registered mail duly directed to the said L'Engle at Jacksonville, Florida, a letter stating in substance that the said sum of money was held by the said Bank to be delivered to said L'Engle on the making of said deed which said letter was duly delivered to the said L'Engle upon his return to the said city of Jacksonville. That on the first day thereafter, on to-wit, the first day of April said plaintiff Walter Overstreet demanded of said L'Engle a deed of conveyance in accordance with the provisions of the instrument above set forth and again informed the said L'Engle that the above mentioned sum of two thousand dollars had been placed in the bank to be paid to said L'Engle because of the inability of the said Overstreet to find him, the said L'Engle, and said L'Engle did then and there state to said Overstreet that the above mentioned instrument had lapsed and that no deed would be made thereunder. That thereafter, to-wit, on the 4th day of April, 1910, the said L'Engle did offer to return to said plaintiff Overstreet the above mentioned quarterly payments of forty dollars each theretofore made by plaintiffs, or a large number of them, amounting to the sum of, to-wit, five or six hundred dollars stating that he the said L'Engle had received the above mentioned letter notifying him of the deposit of the said sum of two thousand dollars as above set forth and that the rights of the plaintiffs under the above mentioned instrument had expired and that no deed would be made thereunder. Defendant is a very aged lady and for several years immediately preceding the commencement of this suit has customarily transacted her real estate business through the agency of her son, said Porcher L'Engle.

That on or about the 8th day of April, 1910, plaintiff Walter Overstreet demanded of the defendant Charlotte J. L'Engle in person performance of the instrument above set forth, and said defendant Charlotte J. L'Engle did then and there promise and agree to and with said Walter Overstreet in behalf of the plaintiffs that she, the said Charlotte J. L'Engle would by and through her said attorney Porcher L'Engle do what was just and honorable in the premises. And thereafter to-wit, on the 11th day of April, 1910, said Porcher L'Engle and the said defendant having taken no action in the premises plaintiff Walter Overstreet did tender to the said defendant Charlotte J. L'Engle in person two thousand dollars, lawful money of the United States of America and demand of said Charlotte J. L'Engle to execute and deliver to plaintiffs Walter Overstreet and P. A. Cunningham a deed of conveyance to the land above described, which the said defendant Charlotte J. L'Engle did then and there refuse to do in the absence of said Porcher L'Engle, but the said Charlotte J. L'Engle did then and there promise and agree with the plaintiff Walter Overstreet for and in behalf of himself and his co-plaintiffs that she the said Charlotte J. L'Engle would cause her said attorney in fact Porcher L'Engle to do what was just and honorable in the premises.

That since on or about March 24th, 1905, Walter Overstreet and P. A. Cunningham, or the plaintiffs Walter Overstreet, P. A. Cunningham and Arthur J. Cunningham have been continuously in possession of the above described land; that during all of said time has been and still is enclosed by a substantial fence, and that during all or part of said time the same has been used as a pasture for cattle by these plaintiffs or those claiming by, through or under them; and that the same is now so used

by these plaintiffs or those claiming by, through or under them.

That in 1905, the plaintiffs, Walter Overstreet and P. A. Cunningham did agree by word and mouth with plaintiff Arthur J. Cunningham for a valuable consideration that said Arthur J. Cunningham should have a one-third interest in the rights of the said plaintiffs in and to said land by reason of the instrument above set forth; and these plaintiffs say that while no writing has ever been executed between these plaintiffs with respect to said land that the plaintiffs Walter Overstreet and P. A. Cunningham recognize the above mentioned oral agreement as of binding force and effect and stand at all times ready to execute the same.

That the defendant though often requested has refused and neglected to make a deed of conveyance to the above described land to these plaintiffs or either or any of them, and still refuses and neglects so to do and pretends that by failure of the plaintiffs to pay said sum of two thousand dollars on or before the 24th day of March, 1910, all rights of the plaintiffs in the above instrument above set forth ceased and determined. Whereas, these plaintiffs aver that at all the times hereinbefore mentioned, they have believed and have acted upon the understanding and belief that the said two thousand dollars might be paid at any time while plaintiffs were not in default in the performance on their part of said instrument above set forth, that each of said forty dollar payments when made completed plaintiff's performance with respect thereto up to the next quarter day in said instrument mentioned, and that plaintiff's performance of said instrument was complete up to and inclusive of the 31st day of March, 1910. and these plaintiffs aver that the said understanding of the plaintiffs was induced or acquiesced in by the said

Porcher L'Engle as evidenced by his above mentioned addendum to the said instrument made by said Porcher L'Engle on the 24th day of March, 1905, in the words and figures following, to-wit, "Lease paid to June 30th, 1905. P. L'E." Plaintiffs aver that from and after the said forty dollar payment on said 24th day of March, 1905, each of the several forty dollar payments by plaintiffs made was made with the understanding and belief on the part of plaintiffs that the same operated to extend the said instrument to the next quarter day in said instrument mentioned. Plaintiffs further say that the same is the true construction of the said instrument, and further that by the acts and doings of the said defendant and her said attorney in fact Porcher L'Engle said defendant is precluded and estopped from contending to the contrary."

The plaintiffs offer to do equity and pray for specific performance.

A demurrer on the following grounds was overruled:

"1st. That said bill sets forth no facts entitling the complainants to the relief prayed or to any relief.

2nd. That it appears from the lease under seal set out in the bill that the complainants, Overstreet and Cunningham, were only given an option to purchase the leased property during the continuance of the said lease and that the terms of the said lease expired with the 23rd day of March, A. D. 1910, and it is not averred that any effort was made to exercise the said option until after the expiration of the said term, though it is expressly stated in said lease that "time is of the essence of the contract."

3rd. It appears from said bill that no tender of the $2,000.00 was made either to defendant or her attorney, until after the expiration of the option given in the lease set forth in the bill and it is not averred that said defendant was not at her residence in the city of Jackson-

ville on and prior to the 24th day of March, A. D. 1910.

4th.   That it does not appear that the attorney of defendant was not at his usual place of business on and prior to the 24th day of March, 1910."

On appeal, the order overruling the demurrer is assigned and argued as error.

*Young & Adams, Alex. St.-Clair Abrams* and *F. T. Myers,* for Appellant;

*Bisbee & Bedell,* for Appellees.

WHITFIELD, C. J. (*after stating the facts.*)—Whether the specific performance of a contract for the conveyance of real estate will be enforced by judicial procedure is determined by the application of the established principles of equity designed for administering justice that are appropriate to the facts and circumstances of the particular case.   Primarily the contract should be definite and legally binding and its enforcement be practical and equitable.   See Taylor v. Florida East Coast R. Co., 54 Fla., 635, 45 South. Rep., 574, 16 L. R. A. (N. S.) 307, 127 Am. St. Rep., 155; Asia v. Hiser, 38 Fla., 71, 20 South. Rep., 796; 10 Current Law 1674; Maloy v. Boyett, 53 Fla., 956, 43 South. Rep., 243.

Where in a contract to convey lands it is expressly covenanted by an indenture that time shall be of the essence of the contract, the plaintiff to have specific performance must perform or offer to perform within the time specified, unless his delay is sufficiently excused or waived.   Non performance of a contract for the conveyance of land within the specified time may be excused so as to authorize specific performance when the defendant caused the delay, as by evading tender or performance, or by causing

the plaintiff to be misled or to make a mistake as to his rights; or the delay may be waived expressly or impliedly by the agreement or conduct of the defendant. See Shouse v. Doame, 39 Fla., 95, 21 South. Rep., 807; 36 Cyc. 712, 716 *et seq.*

Where a party has paid no part of the purchase price, and loses a right to purchase lands within a stated period by the mere expiration of the time definitely limited by an indenture in which time is expressly made of the essence of the contract, such loss is not a forfeiture requiring action by the opposite party and against which equity will give relief.

Improvements afford no independent ground for specific performance unless they are both valuable and permanent and are warranted by the contract. 36 Cyc. 670.

In construing a contract the leading object is to ascertain and effectuate the intention of the parties. To ascertain the real intent, the language used, the subject-matter, and the purpose designed may be considered. When the purpose designed to be accomplished is ascertained, the meaning and effect given to the language used should comport with the intended purpose. While ambiguous language is to be construed against the person using it, yet it should be given an effect that will be in accord with the object in view. The real intention, as disclosed by a fair consideration of all parts of a contract, should control the meaning given to mere words or particular provisions, when they have reference to the main purpose. Brown v. Beckwith, 60 Fla., 310, 53 South. Rep., 542. With these principles in view the allegations admitted by the demurrer will be considered.

The contract in this case was a lease for five years from March 24th, 1905, provided lessees pay in advance to the lessor without demand $40.00 four times during each of

said five years on the first days of January, April, July and October, the first payment on the lease being made March 24, 1905, the next was due July 1st, 1905, and the last payment on the lease was due January 1st, 1910. The lessees were to pay all taxes and assessments on the land and to keep the buildings thereon insured payable to the lessor, subject to eviction and to abrogation of the contract at the will of the lessor after thirty days of default in the payment of either rent, taxes, assessments or insurance premiums. Time is expressly made of the essence of the contract. The lessor covenants that upon the faithful performance of the above conditions by the lessees, to execute and deliver to them "at any time within the period limited above," which period was five years from March 24th, 1905, a good title in fee to the land, upon the payment of $2,000.00, there being *no lease* in arrears. The lessees promised to pay the $2,000.00 and the *lease or rent* on the dates named and all taxes and assessments, and if default be made therein for thirty days the lessees should surrender possession to the lessor. At the foot of the instrument the following words and figures appear: "Lease paid to June 30th, 1905. P. L'E." The word "lease" appears to have been used in the deed and in the addenda as meaning "rent." In effect the lessor covenants that upon the faithful performance by the lessees of the conditions to pay all rent, taxes, assessments and insurance as agreed, the lessor will "execute and deliver to them at any time within the period" of five years from March 24, 1905, "a good title in fee to the land, upon payment * * * of $2,000.00," there being no rent in arrears. In effect the lessees promised to pay the $2,000.00 *or* the rent on the first days of January, April, July and October, during the period of the lease, and all taxes and assessments, and if default be made therein for

thirty days the lessees should surrender the possession to the lessor. It is clear that the word "lease" as used means "rent." It is also apparent that the promise of the lessees "to pay the said principal sum mentioned above," meaning of course the $2,000.00, "*and* the said lease or rent," was in reality an express promise to pay the $2,000.00 *or* the quarterly rent due on the first days of January, April, July and October during the continuance of the lease, with a right to the lessees under the previous paragraph of the deed to pay the $2,000.00 "at any time within the period" of the lease, and time was expressly made of the essence of the contract. If the rent was paid as agreed the lessor could not require the lessees to pay the $2,000.00 and take "a good title in fee to the land." The lessor's remedy by the terms of the deed was "eviction and abrogation of the agreement," or to require the lessor to "surrender possession," if the rent, taxes, assessments and insurance were not paid as agreed. Although there was an express promise by the lessees to pay the $2,000.00, they were not required by the instrument taken as an entirety to pay the $2,000.00 at all so long as they paid the rent &c., as agreed. And even if the rent &c., was not paid as agreed, the contract remedy was not to require the $2,000.00 to be paid, but the agreed remedy was eviction and abrogation of the contract and a surrender of the possession of the land. The deed did not give a right to the lessees to pay either the $2,000.00 or the rent after the expiration of the lease; nor did it give the lessor a right to require the lessees to pay the $2,000.00 after the lease had expired March 24th, 1910. If the lessors had not paid either the rent or the $2,000.00 on a named quarterly pay day, or thirty days thereafter, the lessee was required to surrender the possession, and the lessor was not required to re-enter to put an end to the lessees

rights. As the quarterly rent was paid on January 1, 1910, that gave the lessees a right to possession as lessees to the end of the lease March 24th, 1910.

The notation "Lease paid to June 30th, 1905, P. L' E." did not extend the period of the lease definitely fixed in the deed. It merely acknowledged the payment in fact on March 24, 1905, of the quarterly rent due April 1st, 1905, and recited as being the consideration for the making of the lease. This clearly appears from the allegations of the bill admitted by the demurrer.

The days between March 24th, 1905, and April 1st, 1905, for which apparently no rent was paid were equal to those days between March 24th, 1910, when the lease expired, and April 1st, 1910, when a regular quarter ended, so the lessees had a five years lease for five years payments. The rent payments were required to be made quarterly in advance and the purchase payment was required to be made "within the period" of the lease. This meant if rents were paid to and including January 1st, 1910, the purchase money was to be paid before the lease expired because the lessees had possession and the lessor was entitled to the purchase money or the rent while the lessors were in possession under the contract. The covenant of the lessor to make "a good title to the lands" is dependent upon the faithful performance of the conditions of the lease by the lessees and the payment by the lessees of the $2,000.00 within the time or period of the lease. Possession was given and taken in virtue of the lease, the first rental payment in advance being recited as the consideration for the deed. The right to purchase *during the lease period* was expressly given, but the lessees were not bound to pay the purchase price so long as they paid the rent as agreed and the last payment in advance of the rent on January 1st, 1910, entitled the lessees to possession

till the expiration of the lease with the privilege "at any time within the period" of the lease to tender the $2,000.00 and demand "a good title in fee to the land." The lessor had no right to enforce the payment of the purchase price while the terms of the lease were complied with, because the payment of rent in advance on the stated days gave the lessees a right to the premises till the next rent payment was due, and then another payment of rent in advance again continued the lessee's right till the next payment became due, or the lease expired by limitation. The promise of the lessees to pay the $2,000 for the purchase of the property was not absolute to be enforced at any time within the period fixed by the statute of limitations. After the expiration of the lease the lessor could not *enforce* the payment of the purchase money for the reason that in requiring payments of rent to be made quarterly in advance, in designating the speedy remedies against the lessees, in requiring the purchase money to be paid on stated days but ultimately before the lease expired in order to have a conveyance made at any time within the period of the lease, and in expressly making time of the essence of the contract, the instrument obviously contemplated that the rights of the parties under it should cease at the expiration of the lease period, if the purchase money had not then been paid. The lessees not having defaulted in the payment of rent, taxes, assessments or insurance premiums, they could have "at any time within the period limited" meaning before March 25th, 1910, demanded "a good title to the land" upon payment of $2,000.00. But the tender of $2,000.00 was not made till March 30th, 1910. As the lessees did not tender the $2,000.00 at any time "within the period" of the lease, the contract should not be specifically enforced, unless circumstances raise an equity in the lessees that entitles

them in conscience to a title to the land. Unless the failure to tender the $2,000.00 "within the period limited" is due to some circumstance for which the lessor is responsible, an equity for specific performance does not appear to be reasonably possible. The notation on the contract "Lease paid to June 30th, 1905, P. L'E.," and the acceptance of quarterly payments of rent under the contract, could not reasonably have been construed by the lessees to extend the period of their lease beyond the express terms of the deed or to extend their rights to make payments.

It is alleged that the quarterly payments of rent were received by the lessor "from and after June 30th, 1905, on each of the several quarter days in said deed mentioned." This shows that the notations on the deed means that the $40.00 contracted to be paid on April 1st, 1905, was in fact paid on March 24th, 1905, as stated in the body of the deed as the consideration for the lease. If the lessees misinterpreted the contract it affords them no equity for specific performance, the lessor not having misled the lessees. See Pomeroy on Specific Performance, section 232 *et seq.* It is contended that a ground for the relief prayed is afforded by the allegations that the plaintiffs, the lessees, believed and have acted upon the understanding and belief that the $2,000.00 might be paid at any time while plaintiffs were not in default in the performance of their part of said instrument above set forth, that each of said forty dollar payments when made completed plaintiff's performance with respect thereto up to the next quarter day in said instrument mentioned, and that plaintiff's performance of said instrument was complete up to and inclusive of the 31st day of March, 1910. And these plaintiffs aver that the said understanding of the plaintiff's was induced or ac-

quiesced in by the said Porcher L'Engle as evidenced by his above mentioned addendum to the said instrument made by said Porcher L'Engle on the 24th day of March, 1905, in the words and figures following, to-wit, 'Lease paid to June 30th, 1905, P. L'E.' Plaintiffs aver that from and after the said forty dollar payment on said 24th day of March, 1905, each of the several forty dollar payments by plaintiffs made was made with the understanding and belief on the part of plaintiffs that the same operated to extend the said instrument to the next quarter day in said instrument mentioned. Plaintiffs further say that the same is the true construction of the said instrument, and further that by the acts and doings of the said defendant and her said attorney in fact Porcher L'Engle said defendant is precluded and estopped from contending to the contrary."

There appears to be no just basis for an equity in these allegations. The asserted "understanding and belief on the part of the plaintiffs that," the terms "Lease paid to June 30th, 1905, P. L'E," having been noted on the lease, the payment of the $40.00 on March 24th, 1905, and each subsequent quarterly payment "was made with the understanding and belief on the part of the plaintiffs that the same operated to extend the said instrument to the next quarter day in said instrument mentioned," is not reasonable under the facts alleged, and could not have been justified under the circumstances so as to give the lessees an equity for specific performance. If this construction of the addenda had been called to the attention of the lessor, a difference as to it might have been avoided.

The notation on the lease is not misleading and no act of the lessor's representative that was fairly calculated to deceive or mislead the lessees is alleged. If the lessees erroneously construed the contract or misunderstood

their rights under it, an equity is not thereby raised in their favor when the lessor or her agent did not contribute to the error or misunderstanding.

Allegations in the bill of complaint of facts showing a disposition on the part of the lessor and her agent to "do what is just and honorable in the premises" and to return some of the rental payments made, or to otherwise adjust the controversy, do not give the lessees the right claimed.

The allegation that the lessees had verbally agreed to let another party have an interest "in the rights of the plaintiffs in and to said land by reason of the instrument above set forth" gives no equity as against the lessor.

Allegations that the lessors remain in possession of the land and that they enclosed it with a substantial fence for pasture purposes, do not give an equity for specific performance of the contract in this case.

As the offer to pay the price was not made till March 30th, 1910, after the expiration of the period limited, and as no equities appear to warrant the court in disregarding the contract provision that "time is of the essence of this contract," the contract should not be specifically enforced, there being no waiver of the rights given by the contract.

The order appealed from is reversed.

TAYLOR, SHACKLEFORD, HOCKER and PARKHILL, J. J., concur.

COCKERELL, J., dissenting.

I cannot give assent to the construction placed upon the contract by the court.

As I read it, Overstreet and his associates, unconditionally bound themselves to pay the $2000.00, the agreed value of the lots, on and after the expiration of five years from date, with the privilege of anticipating the payment upon any quarter day, Mrs. L'Engle having the option to demand payment, on tendering a deed, or possession: that correlative to this binding obligation to pay, there arose a right or equity in Overstreet to demand specific performance on Mrs. L'Engle's part, which was not entirely consumed by the very slight lapse of five days—during which their possession was not interfered with or aught done to relieve them of their promise to pay the two thousand dollars.

It would seem that the so-called lease feature of the contract was rather in the nature of quarterly interest at the rate of eight per cent. upon the deferred payment, with a right of re-entry upon default, which could be stopped at any time by anticipating the maturity of the principal.