HERMAN R. FINN, *Appellant,* v. J. E. T. BOWDEN, *Appellee.*

### Opinion Filed June 25, 1913.

Where a contract is on its face a lease of land for a specific term with the privilege of paying for and procuring a conveyance of the land at any time "within the period limited," the mere tender of the purchase price after the expiration of the time specifically designated and limited, where no controlling equity is shown, does not entitle the lessee to a specific enforcement of the contract that has expired by limitation.

Appealed from the Circuit Court of Duval County; R. M. Call, Judge.

Decree affirmed.

*Axtell & Rinehart,* for Appellant;

*John E. Hartridge,* for Appellee.

WHITFIELD, J.—Finn alleges that on January 1st, 1906, he entered into an agreement with Bowden to purchase from Bowden described real estate; that pursuant to the agreement, they entered into a written contract whereby Bowden "purported to lease" the land to complainant for a period of five years from January 1st, 1906; that the "defendant therein covenanted for himself and his heirs and assigns upon the faithful performance of the conditions of the contract by" the complainant "to deliver to him at any time within said five years, a good title in fee to said land, upon the payment of $5,000.00." The instrument referred to is as follows:

"(16318)

James E. T. Bowden,

   —to—          AGREEMENT.

H. R. Finn.

This agreement made this 1st day of January, nineteen hundred and six, between J. E. T. Bowden, lessor of the first part, and H. R. Finn, lessee of the second part, both of Duval County, Florida.

Witnesseth: That in consideration of One Dollar to me paid by the said party of the second part, I do hereby lease to the said party of the second part, that certain tract or parcel of land in the County and State aforesaid, in the City of Jacksonville, in that part of said City known as LaVilla and described as follows:

Beginning at a point on the north side of Adams street ————feet west of the northwest corner of the intersection of Madison and Adams Streets, and running north 126 feet and 8 inches to a point, thence west 65 feet to a fence corner, thence south 20 feet to a fence corner, thence west 12 feet to a division fence, thence south 106 feet to Adams Street, thence east 81 feet to the place of beginning, being all of lot five (5) and parts of lots two (2) and four (4) and six (6) in Block seven (7), Division 'E,' LaVilla. It is understood that the above mentioned measurements are to be governed by the fences as they now stand.

To have and to hold the land described to the party of the second part, and his legal representatives, and assigns for five years from the date hereof, provided that he does or those holding through him shall pay to me or to my legal representatives or assigns without demand, one hundred dollars ($100.00) three times in each year on the first day of May, September and January, and shall pay all taxes and assessments on said land and keep the

buildings thereon insured for no less than two thousand ($2000.00) dollars loss payable to lessor subject to eviction and to abrogation of this agreement, at will of lessor after thirty days default of either rent, taxes, assessment or insurance premiums.

And I do hereby covenant for myself and for my heirs and assigns upon the faithful performance of the above conditions by the party of the second part, or by those holding through him, to execute and deliver to him at any time within the period limited above, a good title in fee to the land described herein, upon the payment to me or to my legal representatives of Five Thousand Dollars ($5,000.00).

And the said lessee for himself and his legal representatives and assigns promises to pay said principal sum mentioned above and the said lease or rent herein stipulated on the dates named and all taxes and assessments and insurance premiums and if default be made therein for thirty days to surrender possession of said property to said lessor.

In Witness Whereof, the said lessor and lessee have hereunto set their hands and seals in duplicate this first day of January, A. D. 1906.

Signed, sealed and          James E. T. Bowden,
delivered before us;
Bainbridge Richardson,          H. R. Finn.
I. Beverly Nalle."

The bill of complaint further alleges that on December 29th 1910, the complainant, "caused to be prepared and submitted to the defendant for execution by the defendant and his wife, a fee simple warranty deed to said property and requested the defendant to execute the same; that your orator was then and there ready, able and willing to pay to the defendant the said sum of Five Thou-

sand Dollars ($5,000.) as the purchase price of said property; that the defendant delayed executing said deed, upon the pretence that he desired to examine the description of the land therein contained. And subsequently on the 30th day of December, 1910, returned the said deed unexecuted, claiming that the description in the said proposed deed was not a proper description of the land contracted to be conveyed as hereinbefore set forth, although the land described in said deed was in fact the same land as that described in the contract to convey hereinbefore set forth, and is the same land of which your orator took possession under said contract as aforesaid;" that on January 3rd, 1911, the complainant "tendered to the defendant Five Thousand Dollars ($5,000.00) in legal tender money of the United States of America and demanded from said defendant a good and sufficient deed conveying a good title in fee to the land hereinbefore described, in accordance with the contract of sale hereinbefore set forth, but said defendant refused to receive said tender and refused to deliver to your orator the deed in accordance with the said contract. And your orator further avers that he is now, and has been at all times since the said tender, ready, able and willing to pay the said Five Thousand Dollars ($5,000.00) and accept a deed conveying a good title in fee to the said land, but that the said defendant refuses to deliver a deed in accordance with said contract."

The prayer is that the defendant "be required to execute and deliver to your orator a deed of conveyance. conveying a good title in fee to the land described in the contract hereinbefore referred to and made a part of this bill, upon payment to him of the said Five Thousand Dollars ($5,000.00), and that the said defendant may be by a temporary injunction enjoined and restrained from

interfering in any way with the possession of the said property by your orator and that he may be restrained and enjoined from instituting any suit or suits at law against your orator, seeking in any way to dispossess your orator of the said premises, and for such other, further and different relief as to your Honor may seem meet and in accordance with the proceedings of Courts of equity."

By answer the defendant avers that when the deed was presented to him by the agent of Finn for execution on December 29th, 1910, he was sick in bed; that the agent said to him "I do not think you feel well enough to look it over tonight and I will come in some time in the morning, but we will not have the money to pay you until next week as Mr. Finn is now negotiating a loan for this payment' to which this defendant then and there replied, 'That won't do.' After which the said Richardson left without asking defendant to sign any paper;" that the next day he left the deed with a clerk at the office of Finn's agent and directed that the agent "could notify Mr. Finn that defendant would not sign that deed, but would sign a deed made according to the original contract, provided the money was paid over within the time named in the contract;" that the same night the defendant told the agent of Finn "that the money must be paid within the time named in the contract or defendant would not execute the deed;" that defendant upon the agent "leaving this defendant, against stated to him and put him upon notice that the purchase money must be paid within the time named in the contract;" that the time for payment expired and no tender or offer to pay the purchase price was made till January 3rd, 1911, when defendant refused to execute a conveyance of the land. Testimony was taken and from a final decree for the defendant the complainant appealed.

The complainant's agent testified that he asked the defendant if Finn could buy the property "on a contract for a term of years;" and that defendant "agreed to sell it on the terms of the contract as drawn up."

Whatever may have ben the proposition made to the defendant, the complainant shows by his witness that the defendant only agreed to sell the property *"on the terms of the contract as drawn up."* This being so the terms of the contract "as drawn up" should be the measure of the right of the parties in the absence of a countervailing equity. The contract is on its face a lease of land for a specific term with the privilege of paying for and procuring a conveyance of the land at any time within the period of the lease; and the mere tender of the purchase price after the expiration of the lease period, where no controlling equity is shown, does not entitle the lessee to a specific enforcement of the contract that has expired. Nonperformance of a contract for the conveyance of land within the specified time may be excused so as to authorize specific performance when the defendant caused the delay, as by evading tender or performance, or by causing the complainant to be misled or to make a mistake as to his rights; or the delay may be waived expressly or implied by the agreement or conduct of the defendant. See L'Engle v. Overstreet, 61 Fla. 653, 55 South. Rep. 381. The instrument in this case did not make time of the essence of the contract, but the limitations therein are definite and binding in the absence of intervening equities. The lessee at any time before the expiration of the designated period could have terminated the relation of lessor and lessee existing between the parties and established the relation of vendor and vendee between them by tendering the agreed purchase price and demanding a con-

veyance under the terms of the contract. This he did not do.

Upon the testimony, the chancellor was warranted in finding in effect that, even though the defendant knew the plaintiff intended to buy the land under his contract rights, the defendant did not cause the delay; that the controversy as to the boundaries of the land contained in the deed which the defendant was asked to execute, there being at the time no tender of the purchase price or its equivalent, did not mislead the complainant or his agent or cause him to mistake his rights; that the defendant on December 29 and 30 notified the complainant's agent that the payment must be made within the contract time; that the defendant did not expressly or by conduct waive his rights to an observance of the terms of the written contract formally executed by both parties; that the complainant did not by a tender or its equivalent of the purchase price within the specified time avail himself of his privilege to require the defendant "to execute and deliver to him at any time within the period limited above a good title in fee to the land described herein, upon the payment ————of five thousand dollars," as expressly provided by the contract; and that the complainant was not entitled to have a conveyance enforced in equity, when the tender of the purchase price was not made within the contract period, there being no controlling equities in evidence. The defendant agred to sell only "on the terms of the contract as drawn up," and no part of the purchase price was paid before the expiration of the lease period, as in L'Engle v. Overstreet, 64 Fla. 60 South. Rep. 120.

The decree is affirmed.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND HOCKER, J. J., concur.