LEE DEKLE AND T. B. SHERRILL, *Appellants*, v. VALRICO SANDSTONE COMPANY, A CORPORATION, *et al., Appellees.*

Opinion Filed November 19, 1917.

1. Under Section 2211 General Statutes there can be no recovery from the owner or liens upon the property of the owner for labor and material furnished to the contractors and used in a building except for "the amount due by" the owner to the contractors or to their assignees or sureties at the time the liens are perfected, or subsequently.

2. Where the assignees or the sureties of the contractors un-

dertake to complete a contractor's abandoned contract, the lien of laborers and materialmen may attach for the amount unpaid on the contract, but not for a greater amount.

3. Where the contractor abandons the building contract and the building is completed by the owner of the land, liens may be obtained for amounts not greater than the amount due to the contractor under the terms of the contract.

4. An assignee of a building contractor or a surety on a contractor's bond may be a successor in interest to the contractor but the interest of the owner of the building is adverse to that of the contractor.

5. Where the contractors abandon a building contract when no liens of materialmen or laborers had been acquired against the property, and when there was nothing due and unpaid to the contractor on the part performance of the contract and nothing afterwards became due to the contractors or their successors in interest on the contract because the owner completing the building at a loss on the contract price, no liens attach to the owners property for those who furnished material and labor to the contractor before he abandoned the contract.

6. In determining the legal effect of a bond given to secure the performance of a building contract, all of its provisions should be considered and effect should be given to the intent of the parties as shown by the entire instrument taken in connection with the contract when such intent is not unlawful.

7. The real intention, as disclosed by a fair consideration of all parts of a contract, should control the meaning given to mere words or particular provisions, when they have reference to the main purpose.

8. Where a bond is given to secure the performance of a building contract, the owners of the property being the

obligees and the bond is expressly given to indemnify the owners and "all persons who may become entitled to claims or liens under the contract according to the provisions of the law in such cases made and provided," the provisions of such bond should not be held to give rights of action thereon in favor of those who furnished labor and material to the contractor but have no claims under the law against the property owner, obligees in the bond, unless the terms of the bond clearly require it to be so interpreted.

Appeal from Circuit Court for Hillsborough County, F. M. Robles, Judge.

Decree reversed.

*McKay, Withers & Phipps* and *Whitaker, Himes & Whitaker,* for Appellants;

*Sparkman & Carter, W. C. Bigger, Victor H. Knight, James F. Glen, Shackleford & Shackleford,* and *William H. Jackson,* for Appellees.

WHITFIELD, J.—It appears that V. Spoto, P. Spoto and S. Spoto owners of Lot One, Block 78 Ybor City, contracted in writing on June 8, 1914, with Parrish & Goin, copartners, that the latter should on or before October 8, 1914, erect, finish and deliver a building of stated specifications on the lot for $16,250.00, the contractors to furnish all material and labor; that to secure the performance of the contract by Parrish & Goin and for the protection of the owners of the lot and others referred to in the instrument, a bond in the penal sum of $8,500.00 was executed June 8, 1914, by Thomas S. Parrish and James D. Goin, copartners, as principals, and by Lee Dekle and T. B. Sherrill, as sureties; that about Sep-

tember 19, 1914, the contractors abandoned the contract, leaving the building unfinished; that the owners completed the building at a cost equal to or in excess of the contract price. On January 28, 1916, Lee Dekle and T. B. Sherrill filed a bill of complaint in equity against the appellees, including those who furnished material and labor to the contractors in erecting the building and the owners of the lot and the contractors, alleging that the building was completed prior to December 15, 1914; that subsequent to the completion of the building thirty-six of the defendants in this suit whose names are stated in full and who have brought thirty-six actions against the complainants herein on their bond for the payment of labor or materials alleged to have been furnished to the contractors for and during the construction of the building; that the aggregate amount of such claims is $3,310.45, or more, and for attorney fees; that six of the other defendants in this suit will institute like suits for $2,287.66; that the owners of the lot and building claim and will sue for a liability against complainants upon their bond $3,061.00; that the aggregate claims amount to $8,659.11 and with interest total not less than $9,500.00 exclusive of attorney fees. The bill of complaint contains the following allegations: (6) That the first named 36 defendants in this suit "and the defendants, American Sheet Metal Works, Jetton Lumber Company, Tampa Electrical Supply Company, T. W. Ramsey, Coates Plumbing Supply Company and Hillsborough Lumber Company, to the extent to which they, or any of them, performed any labor or furnished any material in or for the construction of the building hereinbefore referred to, did the said work for, and furnished the said material to, the contractors aforesaid, without the said plaintiffs and said defendants, or any of them, before or

during the performance of the said labor and furnishing of said materials, delivering or causing to be delivered to the said owners, or any of them, or his or their agent, any written cautionary notice that said plaintiffs and said defendants, or any of them, would do said work, or any work, or would furnish said materials, to or for said contractors. And your orators aver that no such cautionary notice as aforesaid, or any cautionary notice, was given by said (36) plaintiffs and said (other) defendants, or any of them, to the said owners or any of them or his or their agent, before or during the furnishing of the alleged labor and materials to the said contractors. And your orators further aver that the said plaintiffs and the said defendants American Sheet Metal Works, Jetton Lumber Company, Tampa Electrical Supply Company, T. W. Ramsey, Coates Plumbing Supply Company and Hillsborough Lumber Company, and each of them, at all times before the filing of this bill of complaint, neglected and failed to deliver or cause to be delivered to the said owners, or any of them, or his or their agent, any written notice that the said Parrish & Goin, contractors, were indebted to them, or any of them, in any sum, at any time when any amount was unpaid on the building contract hereinbefore referred to by the said owners, which then was or thereafter became due, owing or payable by the said owners upon the said contract. And your orators further aver that there was no amount due, owing or payable upon the building contract hereinbefore mentioned from the said owners at the time of the delivery, or after the delivery, of any lien, notice or notices, given, or attempted to be given, to said owners, or any of them, or his or their agent, by any of the (defendants who are the) said plaintiffs (in the 36 pending suits referred to), or the

six defendants last above named;" * * * (7) "that at the time of the execution and delivery of the bond hereinbefore mentioned, there was in the possession of the obligees named therein, to-wit, the owners, the full amount of the contract price agreed by the said owners to be paid to the said contractors for the construction of the building provided for in said building contract, to-wit, the sum of Sixteen Thousand Two Hundred Fifty Dollars; that as between your orators and the said owners, the said money, after the execution of the said bond, was held by the said owners in a trust capacity, to be applied in the manner, and no other, prescribed in said building contract for the payment of the same to the said contractors; that the said owners, were without right or authority to disburse or pay out the said funds in any manner other than as prescribed and set forth in said contract; that nevertheless, the said owners, without the consent or acquiescence of your orators, or either of them, and to the prejudice of your orators and each of them, made material departures from, or changes in said building contract hereinbefore mentioned, in the time and manner of the making of the payments of the contract price for the construction of said building to the said contractors, and that large payments made by said owners, the exact amount of which is unknown to your orators, aggregating Five Thousand Dollars or more, were paid out by the said owners to the said contractors in violation of provisions made in said contract, in that said payments exceeded, when made, more than eighty per cent. of the cost of materials furnished and built in, and the cost of labor performed on the said building, and said payments were made without a certificate from A. L. Shaw, the architect therein named, and who was then acting as architect, under the said

contract, to the effect that said architect knew that said work was correctly and thoroughly done, and that the said architect considered the said payments properly due, and that said payments were made without there being a certificate obtained from the Clerk of the Circuit Court of Hillsborough County, Florida, that said clerk had carefully examined the Public Records of said county and found no liens or claims recorded against said building, or on account of the said contractors, and without a certificate from said architect receipted by each artisan and laborer employed upon the said building that he had been paid in full, and without the said contractors, or either of them, making oath according to the said architect's certificate that all bills had been paid and that there were no unpaid accounts against the said building, and large payments were made, amounting to Five Thousand Dollars, or more, the exact amount being to your orators unknown, without said owners reserving twenty per cent. during the progress of the work to be paid upon the final completion and full acceptance thereof, and further payments of large sums of money were made the exact amount being to your orators unknown, more frequently than weekly, as provided for in said contract.

"And your orators further charge that on or about the 19th day of September, 1914, the said contractors, having received from the said owners payments upon the said contract price for the construction of said building in violation of the terms of the building contract aforesaid, as above stated, and largely in excess of the amount to which said contractors had become entitled, under the terms of the said contract for the work done, the said contractors totally abandoned the said contract and the construction of the building therein provided for, leaving

the said building largely unfinished, and afterwards, the
said owners completed the construction of said building
at a necessary cost and expense to said owners equalling,
or in excess of the balance then unpaid by said owners
upon said building contract, the exact amount being to
your orators unknown; and the exact amount paid by
said owners to said contractors before the abandonment
as aforesaid, is to your orators unknown, and the amount
expended by the said owners in the completion of the
said building is to your orators unknown; that your
orators, shortly after the abandonment of the said con
tract by the said contractors, as alleged, were requested
by the owners to complete the said building contract, but
your orators refused so to do for the reason that your
orators were then informed, and believed, and are now
informed and believe, that they were discharged from
any liability or obligation to the said owners under the
bond hereinbefore mentioned, by reason of the material
departures and change, to the prejudice of your orators
agreed to and participated in by the said owners in the
making of the aforesaid payments to the said contrac-
tors otherwise than as provided for in the building con-
tract that had been theretofore entered into, and in
violation of the provisions of the said contract;" (7 1-2)
"that the bond hereinbefore set forth was executed and
delivered to the obligees therein named to secure the
faithful performance of the building contract therein
referred to and made a part thereof upon the terms and
conditions and in the manner contained and set forth
in said contract, and not otherwise; that among other
things said contract provided that payments should be
made to the contractors at certain times and upon cer-
tain conditions, as set forth in the said contract, and not
otherwise, and that your orators had a right to expect

and did expect that the said terms of the said contract for the faithful performance of which they became sureties would be strictly complied with by and on the part of the principal parties thereto, but that, disregarding their duty to so comply with such terms, and without the knowledge or consent of your orators, and to their prejudice, the said owners and the said contractors made material departures from and violated the terms and provisions of the said contract in the manner following to-wit:

"That from time to time payments were made which exceeded eighty (80%) per cent. of the cost of material furnished and built in and the costs of labor performed on the said building at the time of such payments and without reserving twenty (20%) per cent. of such costs as provided in said contract; that payments were made at times other than the weekly or semi-monthly periods provided for in said contract; that payments were made without a certificate from A. L. Shaw, the architect therein named and who was then acting as architect under the said contract, to the effect that said architect knew that said work was correctly and thoroughly done, and that he considered said payment properly due, and that payments were made without there being a certificate obtained from the Clerk of the Circuit Court of Hillsborough County, Florida, that said Clerk had carefully examined the public records of his said office and found no liens or claims recorded against said building or on account of said contractors.

"Your orators further aver that the payments so improperly made amount to a large sum, the exact amount of which is to your orators unknown, but that they are informed and believe that said payments amount to more than the sum of Five Thousand ($5,000.00) Dol-

lars, and that all such improper payments were made before any notice or notices of lien or of intention to claim a lien on the property described in said contract and on account of any materials furnished or work done under said contract were filed or attempted to be filed or served by or on behalf of any of the defendants to this suit, and before any rights under the said bond accrued to any of the defendants who furnished material or performed labor under the said contract, if any right ever accrued to such defendants, and that by virtue of such departures from and violation of the terms and conditions of said contract your orators were released from any and all liability upon the said bond."

The bill contains other allegations not essential to be stated here.

It is prayed, among other things, that the pending suits be enjoined; that the institution of other suits be enjoined; that the bond be canceled; that if relief asked is not proper, then for an accounting, and for general relief. Some of the defendants laborers and materialmen demurred specially to a portion of section 6 of the bill of complaint, others to section 7, and still others to section 7 1-2 of the bill of complaint. These several special demurrers to portions of the bill of complaint were sustained, and the complainants appealed from such interlocutory orders.

By the terms of the bond the obligors "are held and firmly bound unto V. Spoto, P. Spoto and S. Spoto * * * as well as unto all persons who may become entitled to liens under the contract hereinafter mentioned, in the sum of $8,500.00 * * * to be paid to the said V. Spoto, P. Spoto and S. Spoto, and to the said parties who may be entitled to liens as aforesaid," and conditioned that if the contractors "shall in all

things stand to and abide by, and well and truly keep and perform all the covenants, conditions and agreements in the above mentioned contract .* *. * for the construction of said building described in said contract, and shall duly and properly pay all indebtedness that may be incurred by the said Parrish & Goin in carrying out the said contract, and complete the said building in accordance with the terms of said contract, and shall save and keep harmless the said V. Spoto, P. Spoto and S. Spoto and the said building and the land on which the same is erected, from all and every claim and lien for materials, labor or otherwise incurred by the reason of the erection and completion of said building and shall turn over to said V. Spoto, P. Spoto and S. Spoto, free and clear from such liens and claims for material or labor. in anywise incurred by reason of the erection of said building and so truly keep and perform the covenants, conditions and agreements in said contract hereinbefore mentioned on their part to be kept and performed, at the time and in the manner and form therein specified, and shall pay all costs including attorneys fees that any of the parties for whose benefit this bond is made may be put to in enforcing the payment and collection of any and all indebtedness incurred by the said Parrish and Goin in carrying out this contract by the said Parrish & Goin, then this obligation shall be void, otherwise to remain in full force and virtue. * * * And it is mutually agreed by and between all the parties to this bond that this bond is made for the use and benefit of all persons who may become entitled to claim or liens under the aforesaid contract according to the provisions of the law in such cases made and provided, and that this bond may be sued upon by them as if executed to them in their own proper person."

Section 2211 General Statutes, 1906, provides that "a laborer or materialman not in privity with the owner may have a lien by delivering to the owner or his agent a written notice that the contractor is indebted to him for labor or material in the sum stated in the notice; but if a person who is performing or is about to perform, by himself or other, labor, or is furnishing or is about to furnish materials shall so desire, he may deliver to the owner, or his agent, a written cautionary notice that he will do certain work, or will furnish certain material, or both. A lien shall exist from the time of the service of the notice for the amount unpaid on the contract of and by the owner to the contractor or the person for whom the work was done or the material furnished. Such service shall also create a personal liability against the owner of the property in favor of the lienor giving such notice for the amount due him as aforesaid, but not a greater extent than the amount of such original contract."

Section 2213 General Statutes, 1906, provides that "in every suit at law or in chancery the contractor or the person for whom the labor was performed or the materials furnished must be made a party defendant to the suit and the judgment or decree may provide for the recovery from the contractor or other person as aforesaid of the amount due by him, and from the owner of the amount *due by him* to the contractor or other person as aforesaid, at the time of the service of the notice provided for by Section 2211, as well as decree and enforce the lien against the property of such owner for such amount."

Under this statute there can be no recovery from the owner or liens upon the property of the owner for labor and material furnished to the contractors and used in a building except for "the amount due by" the owner to

the contractors or to their assignees or sureties at the time the liens are perfected, or subsequently.

Where the assignees or the sureties of the contractors undertake to complete a contractor's abandoned contract, the lien of laborers and materialmen may attach for the amount unpaid on the contract, but not for a greater amount. See King v. Ramsey, 66 Fla., 257, 63 South. Rep. 439; Carter v. Brady, 51 Fla. 404, 41 South. Rep. 539.

Where the contractor abandons the building contract and the building is completed by the owner of the land, liens may be obtained for amounts not greater than the amount due to the contractor under the terms of the contract.    Lowry v. Downing Mfg. Co., 73 Fla. 535, 74 South. Rep. 525.

The statute contemplates the completion of a building contract by the contractor or by one who takes his place under the building contract, and that a part of the contract price shall be due and unpaid to the contractor or his successors in interest at the time or after the written notices of contemplated liens are delivered or served. In this case it appears that the contract was abandoned by the contractors when no liens had been acquired, and when there was nothing due and unpaid to the contractors on the part performance of the contract, and nothing became due and unpaid afterwards to the contractors or their successors in interest as the owners completed the building at a loss.    Under these circumstances liens were not acquired by the laborers and materialmen. The owners were not successors in interest to the contractors. The interests of the owners and of the contractors were adverse.

In determining the legal effect of a bond given to secure the performance of a building contract, all of its

provisions should be considered and effect should be given to the intent of the parties as shown by the entire instrument taken in connection with the contract when such intent is not unlawful.   See Brown v. Beckwith, 60 Fla. 310, 53 South. Rep. 542.

The real intention, as disclosed by a fair consideration of all parts of a contract, should control the meaning given to mere words or particular provisions, when they have reference to the main purpose.   L'Engle v. Oversteet, 61 Fla. 653, 55 South. Rep. 381.

Where a bond is given to secure the performance of a building contract, the owners of the property being the obligees and the bond is expressly given to indemnify the owners and "all persons who may become entitled to claims or liens under the contract according to the provisions of the law in such cases made and provided," the provisions of such bond should not be held to give rights of action thereon in favor of those who furnished labor and material to the contractor but have no claims under the law against the property owner obligees in the bond, unless the terms of the bond clearly require it to be so interpreted.   See Gato v. Warrington, 37 Fla. 542, 19 South. Rep. 883.

The bond expressly stipulates "that this bond is made for the use and benefit of all persons who may become entitled to claims or liens under the aforesaid contract *according to the provisions of the law in such cases made and provided."*   "The persons who may become entitled to claims or liens under the" building contract according to law are those who furnish labor or material used in the construction of the building, *and who deliver to the owner or his agent* a written notice as provided for in Section 2211 of the General Stautes of 1906.

If a sufficient written *cautionary* notice of labor or

material being furnished or about to be furnished is delivered to the owner or his agent, or if a sufficient written notice of a stated indebtedness of the contractor for labor and material used in a building is delivered to the owner or his agent, the statute gives to such laborer or materialman a lien "upon the building and the land on which it stands," "from the time of the service of the notice for the amount unpaid on the contract," and provides that in a suit by a laborer or materialman "the judgment or decree may provide for the recovery * * * from the owner of the amount *due by him* to the contractor * * * at the time of service of the notice provided for by Section 2211, as well as decree and enforce the lien against the property of such owner for such amount." Secs. 2190, 2193, 2211 and 2213, Gen. Stats. 1906.

Laborers and materialmen have a right of action against the contractors under the general law, and the statute merely requires the contractors to be made parties in action by laborers and materialmen against the owners, and enacts that "the judgment or decree may provide for the recovery from the contractor * * * of the amount due by him," on account of indebtedness for labor and material.

Considered in its entirety the bond was executed to secure the owners and other "persons who may become entitled to claims or liens under the contract" against the contractors *and* against the owners or their property according to law. The condition of the bond that the contractors "shall duly and properly pay and discharge all indebtedness that may be incurred by the said Parrish and Goin (the contractors) in carrying out the said contract" is limited by other portions of the bond to "the parties for whose benefit this bond is made," who are the

stated obligees and "all persons who may become entitled to claims or liens under the contract." The portion of the bill of complaint under consideration on this appeal shows that the laborers and materialmen had "not become entitled to claims or liens under the contract;" and as a consequence, they have no right of action against the sureties on the bond.

An indebtedness of the contractors for material and labor is not a "claim" under the contract within the meaning of the bond obligations of the sureties. If the contract was breached by the owners and the contractors, no right of action is thereby given to laborers and materialmen who have not protected themselves by acquiring liens under the statute. This being so, the special demurrers were erroneously sustained.

The orders appealed from are reversed.

BROWNE, C. J., AND TAYLOR, ELLIS AND WEST, J. J., concur.