WEST YELLOW PINE COMPANY, A CORPORATION, *Appellant*,
v. C. W. SINCLAIR AND FANNIE SINCLAIR, HIS WIFE, AND
J. C. HIGH, *Appellees*.

Opinion Filed January 27, 1922.

1. Where a stated provision of a deed of indenture appears
   from the context to have been inserted for the benefit of
   one of the parties thereto, he will be considered to have
   chosen the language employed and as having inserted such
   provision, and any uncertainty or ambiguity contained there-
   in will be construed against him for whose benefit the pro-
   vision was inserted in the instrument.

2. The rule construing deeds where there is uncertainty or
   ambiguity in the language employed, most strongly against
   the grantor is not to be resorted to unless necessary, and
   where satisfactory results can be reached by other rules
   of analysis or construction it may not be invoked.

3. While uncertain or ambiguous language employed in a writ-
   ten instrument is to be construed against the person using
   it, yet it should be given the meaning and effect that will
   be in accord with the context and the general object in
   view.

4. The primary consideration in the construction of a deed
   is the intention of the parties thereto, and this intention
   must be gathered from an examination of the whole instru-
   ment, which must be so construed as to render all its pro-
   visions consistent and harmonious, if this may be done.

5. Where the meaning of language employed in a contract is
   ambiguous and doubtful and the parties themselves have
   placed a construction upon it, such construction is material
   and important in determining the true meaning of such
   language.

6. A deed of indenture conveying the trees and timber of given dimensions upon a large body of land composed of many subdivisions according to the United States government survey, together with the right of ingress and egress to, over and from such lands for a stated period of time for the purpose of cutting and removing the timber so conveyed, contained the following provision:

"It is further understood and agreed that any tract of timber shall be but once cut over, and when the cutting privilege is once exhausted on any 'forty' or other larger tract of land the party of the second part shall immediately surrender such tract or tracts to the parties of the first part."

*Held*: That the "cutting privilege" granted is to "once cut over" any "forty or other larger tract of land" described in the conveyance, and that when the grantee or his assignee has "once cut over" any such sub-division of the land the "cutting privilege" acquired is "exhausted" and such grantee or his assignee should "immediately surrender such tract" to the grantor; that the contract may not be so construed as to permit the return of the grantee or his assignee from time to time during the life of the grant to any sub-division of the land and cut and remove therefrom timber of the dimensions described not previously removed; and that the final decree holding the assignee of the grantee has "exhausted" its "cutting privilege" to "once cut over" any subdivision of the land when it "has removed therefrom such timber as it desired under the terms of the said lease in the ordinary and usual course of its saw mill and logging business" is not so ambiguous as to prevent its practical application to the situation and is a proper construction of the language employed in the quoted paragraph.

An Appeal from the Circuit Court for Madison County; M. F. Horne, Judge.

Affirmed.

*E. J. L'Engle, P. L. Gaskins* and *R. H. Rowe,* for
Appellant;

*Chas. E. Davis,* for Appellee.

WEST, J.—The object of this suit is to have construed a
certain deed of indenture and to determine the rights of
the parties thereunder.

On June 25, 1910, and prior to that date, Fannie Sin-
clair, wife of C. W. Sinclair, owned in fee simple certain
lands in Madison County. The tract so owned consisted of
several thousand acres. On the date named she, the said
owner by a certain indenture in which her husband joined,
granted and conveyed to R. L. Dowling of Suwannee
County "all the trees and timber measuring twelve (12)
inches in diameter and up at the stump, said measurement
to be made eighteen (18) inches from the ground, stand-
ing and fallen, lying and being situate" on said land,
together with the right of ingress and egress to, over,
across and from said land "for the period of fifteen (15)
years next immediately succeeding the date" of the con-
veyance for the purpose of cutting, removing and manu-
facturing the timber so conveyed.

On the same date R. L. Dowling, the said grantee, did
assign, grant and convey to the West Yellow Pine Com-
pany the said indenture and all right, title and interest
acquired and owned by him in said timber, together with
all rights and privileges mentioned and conferred in the
contract of conveyance from Sinclair and wife to Dowl-
ing, said West Yellow Pine Company assuming and agree-
ing to faithfully perform and carry out all obligations
contained in said indenture to be performed by said
grantee in accordance with the terms thereof.

The conveyance from the Sinclairs to Dowling contains the following provision with respect to the cutting and removal of the timber thereby conveyed:

"It is further understood and agreed that any tract of timber shall be but once cut over, and when the cutting privilege is once exhausted on any 'forty' or other larger tract of land the party of the second part shall immediately surrender said tract or tracts to the parties of the first part, excepting and reserving to the party of the second part, his heirs and assigns a right of way over said land so surrendered for teams, carts, laborers and loglandings and logroads during the unexpired term of the lease covering such surrendered land or lands."

On March 1, 1916, Fannie Sinclair and C. W. Sinclair, the grantors, conceiving from their interpretation of the provisions of said indenture that the rights of the grantee and his assigns to enter upon certain portions of the land described and cut and remove the timber so conveyed therefrom to have been exhausted and that they, the grantors, were entitled to have such land surrendered to them, did by their representative, J. C. High, enter thereon and commence to cut and remove therefrom certain timber remaining upon such land.

Thereupon, on the theory that the contract of conveyance was not susceptible of the construction placed upon it by the grantors, the West Yellow Pine Company, the complainant, brought this suit against C. W. Sinclair and Fannie Sinclair, his wife, and J. C. High, defendants, and by its bill alleges in substance that under the terms of the conveyance it, the complainant, has the right to enter upon and cut and remove all of the timber of the sizes and dimensions described on any particular tract or portion of

such land and that its operations on such tract or portion
are not thereby required to be continuous until completed;
that it has the right to enter upon any such tract or por-
tion of such land and cut and remove the timber so con-
veyed therefrom as often and at such times as it may
choose; that it may first cut and remove the pine timber
from any tract or portion of the land and afterwards re-
turn and cut and remove the cypress timber therefrom;
that its right to enter upon the land or any tract or por-
tion of it and cut and remove therefrom the timber so con-
veyed is restricted only by the fifteen-year period expressed
in the conveyance and by the quantity of the timber of
the sizes and dimensions conveyed that may be found to
exist on any particular tract or portion of such land; that
defendants' entry upon the land and their cutting of tim-
ber thereon were therefore unauthorized and unlawful and
should be enjoined.

The prayer is for an injunction, a construction of the
contract of conveyance, an accounting, and for general
relief.

The defendants by answer to the bill aver that under
the terms of the contract of conveyance when the complain-
ant has once cut over any particular tract or portion of
said land and has discontinued cutting on such tract or
portion and ceased operation thereon, although it may not
have cut and removed therefrom all the timber of the sizes
and dimensions conveyed, its rights thereon, except as to
ingress and egress, are exhausted, and it has no right there-
after to return and enter upon any such tract or portion
of said land and cut and remove any timber therefrom,
although there may still remain upon such tract or portion
of land timber of the sizes and dimensions to which it was
originally, under the terms of the contract of conveyance,

entitled; that the land upon which defendants had entered and from which they were cutting and removing timber was land which had been once cut over by complainant and as to which its cutting privilege was exhausted; that complainant had no right to any timber which might then remain upon such land although of the sizes and dimensions described in the contract of conveyance; and that such land was, under the terms of the conveyance, surrendered back to defendants exempt from any timber or cutting privilege to complainant and free from any right of complainant thereunder except the right of ingress and egress during the unexpired portion of the fifteen-year period within which all the timber so conveyed was required to be cut and removed.

Testimony was taken and upon final hearing a decree was entered finding "that, under the terms and provisions of the timber deed and lease made by the defendants C. W. Sinclair and his wife to R. L. Dowling and assigned to and now held by the complainant, as mentioned and described in the bill of complaint, it was expressly understood and agreed therein by the parties thereto that any tract of timber should be once cut over, and when the cutting privilege was once exhausted on any 'forty' or larger tract of said land the said R. L. Dowling, his heirs or assigns, should immediately surrender said tract or tracts to the said defendants, excepting and reserving to the said R. L. Dowling, his heirs and assigns, a right of way over said lands so surrendered for teams, carts, laborers and log landings and log roads during the unexpired term of said lease covering such surrendered land or lands; that, under and by virtue of the foregoing provision and agreement contained in said lease, the complainant, entered upon all the lands described in complainant's bill,

save and except only the lands hereinafter specifically described in paragraph two of this decree in the ordinary and usual course of business for the cutting and removal of timber therefrom under said lease and has once cut over each, all and every 'forty' or other larger tract of said land so described in said bill, with the exceptions aforesaid, and has removed therefrom such timber as it desired under the terms of said lease in the ordinary and usual course of its saw mill and logging business,'' and further finding the equities to be in favor of defendants and against complainant, except as to that part of the land described in paragraph two of the final decree, the finding with respect to such land being for complainant. From this decree complainant appealed.

The record is somewhat voluminous. The amount involved is considerable, but the controversy is in small compass. Counsel for the respective parties concur in the view that one question only is involved, and the several assignments of error are considered together in the briefs. The question necessary to be decided is the intent and meaning of the quoted paragraph of the deed of indenture under which the rights of complainant were acquired. This is a question of law. Incidental to this is the question of fact with respect to whether portions of land had been once cut over and the cutting privilege of complainant thereon exhausted within the meaning of this paragraph of the contract.

In support of complainant's contention it is urged that under the terms of the contract of conveyance the ''cutting privilege'' acquired by it ''on any 'forty' or other larger tract of land'' is not ''exhausted'' until it has cut and removed from the land all the timber conveyed; that it is immaterial whether it cuts all the timber upon any such

tract when it first enters upon it for that purpose or not; that it may return to any tract from time to time during the fifteen-year period of the grant and cut and remove any of the timber conveyed not previously cut and removed; and that if the quoted paragraph of the contract is not clearly susceptible of this interpretation its meaning is doubtful and ambiguous. Then, having by this process reached the conclusion stated, complainant invokes the rule that the grantors, having chosen the language employed and being responsible for the alleged uncertainty and ambiguity, must suffer the result of having such language construed against him. This theoretically is a perfectly just rule of construction. It is well established and this court is in full accord with it. 8 R. C. L. p. 1051; L'Engle v. Overstreet, 61 Fla. 653, 55 South. Rep. 381; Brown v. Beckwith, 60 Fla. 310, 53 South. Rep. 542; Capital City Bank v. Hilson, 59 Fla. 215, 51 South. Rep. 853. Its soundness is undisputed. Its application to this case may not be conceded, not because the instrument is a deed of indenture—the paragraph under consideration was clearly inserted for the benefit of the grantors—but because there is no necessity for its application. This rule construing deeds most strongly against the grantor is not to be resorted to unless necessary. Where satisfactory results can be reached by other rules of analysis and construction it may not be invoked. Elsea v. Adkins, 164 Ind. 580, 74 N. E. Rep. 242, 108 Am. St. Rep. 320; Flagg v. Eames, 40 Vt. 16, 94 Am. Dec. 363. The primary consideration in the construction of a deed is the intention of the parties, and this intention must be gathered from an examination of the whole instrument, which must be so construed as to render all its provisions consistent and harmonious, if this may be done. Dekle v. Valrico Sandstone Co., 74 Fla. 346, 77 South. Rep. 95; Ansley v. Graham, 73 Fla. 388, 74

South. Rep. 505; Ross v. Savage, 66 Fla. 106, 63 South.
Rep. 148; L'Engle v. Overstreet, *supra;* Brown v. Beck-
with, *supra;* Hull v. Burr, 58 Fla. 432, 50 South. Rep.
754. In the last cited case this court said; "In construing
any written instrument, whether a deed of conveyance, a
bill of sale, mortgage, contract, or what not, the entire in-
strument must be considered in order to gather the real
intent and true design of the makers thereof. To that end,
all the different provisions of such instrument must be
looked to and all construed so as to give effect to each and
every of them, if that can reasonably be done."

An analysis of the paragraph of the contract of convey-
ance will demonstrate, we think, the unsoundness of com-
plainant's contention and the correctness of the interpre-
tation given it by the court below. That the grantors had
a definite object in view in placing this paragraph in the
conveyance goes without saying. In its absence the grantee
or his assigns would have been fully warranted in going
upon any tract or portion of the land described from time
to time and cutting and removing the timber purchased
or any portion thereof from such tract without any limi-
tation except as to the dimensions of the timber to be cut
and removed and the fifteen-year period within which all
of the timber conveyed was required to be removed and
the defendants would have been entitled to demand a sur-
render of none of the land until the expiration of such
period. Obviously the design of the grantors was to re-
quire a surrender back to them of each forty or other
larger tract of the land described when such tract had been
cut over in order that they might again enjoy its bene-
ficial use. To accomplish this general purpose this para-
graph was inserted in the contract. By it is expressly
provided that "any tract of timber shall be but *once cut*

*over.*'' There is nothing doubtful or ambiguous about the meaning of this language. It is further provided by this paragraph that when the ''cutting privilege'' is ''exhausted'' on any tract or portion of the land such tract or portion is to be immediately surrendered to the grantors. What is the ''cutting privilege'' acquired under this instrument? Clearly it is to ''once cut over'' any forty or tract of the land described. It is ''exhausted,'' that is to say the ''cutting privilege'' is ''exhausted,'' when any forty or tract of such land is ''once cut over,'' and when such forty or tract is ''once cut over'' it should be immediately surrendered to the grantors. So considered, the design of the grantors in incorporating this paragraph in their conveyance would seem to be manifest. There is no conflict or contradiction or inconsistency among the several phrases employed. Each provision is given effect and there is no occasion for invoking the rule requiring a deed to be construed most strongly against the grantor and in favor of the grantee. If the terms employed are themselves sufficiently clear to permit an intelligent application of them to the conduct of the business to which they refer, any apparent difficulty disappears.

What then is the meaning of the expression ''once cut over'' and when will it be deemed that ''any 'forty' or other larger tract of the land'' has been ''once cut over?'' Clearly the grantee may not ''cut over'' the land more than once unless this word ''once'' is to be erased from the context and eliminated in the consideration of the question. He is limited in his ''cutting privilege.'' Such privilege is ''exhausted'' when he has ''cut over'' any particular forty or larger subdivision of the land ''once.''

The court below held that the complainant has ''once cut over'' a forty of the land when it ''has removed there-

from such timber as it desired under the terms of said·
lease *in the ordinary and usual course of its saw mill and
logging business.*" Counsel contend that by this expres-
sion in the decree "an ambiguity has been added to an
ambiguity." We think, however, that the quoted language
of the decree is not.rightly subject to this criticism. Lum-
ber and materials into which trees are converted are among
the state's principal products. Their manufacture and
production have for years been one of the state's greatest
industries. The "ordinary and usual course" of the "saw
mill and logging business" by which lumber and wood
products are produced has acquired a fairly definite and
well understood meaning. That this is so is verified in a
measure by complainant. Naval stores is another of the
state's products. It is produced and manufactured in the
state in large quantities. Its production is one of the
state's great industries. The expression "ordinary course
of business of producing and manufacturing naval stores"
as employed in paragraph two of complainant's bill of com-
plaint with respect to the reserved right of the grantors
expressed in the conveyance to continue their operations
upon the lands described in the production of naval stores,
was not intended to be and is not ambiguous. The mean-
ing of this quoted expression is sufficiently clear that care-
ful pleaders and able lawyers may safely employ it with-
out fear that it will confuse or mislead.

There is evidence in the record tending to prove that the
parties themselves construed the contract of conveyance to
mean that when certain tracts or portions of the land had
been cut over in the ordinary and usual course of com-
plainant's saw mill and logging business, such land had
been "once cut over" within the meaning of the contract,
and that as to certain tracts or portions of the land com-

plainant's "cutting privilege" had been "exhausted." Peoples Savings Bank & Trust Co. v. Landstreet, 80 Fla. 853, 87 South. Rep. 227; Mizell Live Stock Co. v. McCaskill Co., 59 Fla. 322, 51 South. Rep. 547; Scotch Mfg. Co. v. Carr, 53 Fla. 480, 43 South. Rep. 427. No forfeiture of complainant's property or privileges result from the court's holding. Such interest as it may have acquired in the timber under the contract and its right to cut and remove the timber cease and determine as it has agreed in the contract they shall. Zirkle v. Allison, 126 Va. 701, 101 S. E. Rep. 869; Blackstone Mfg. Co, v. Allen, 117 Va. 452, 85 S. E. Rep. 568; Hartley v. Neaves, 117 Va. 219, 84 S. E. Rep. 97.

The holding of the court below in construing the contract of conveyance is in accord with the evident design of the parties to the instrument and will not be disturbed. With respect to the incidental question of fact, there is evidence to support the holding that the land, except such portions as are indicated in the decree appealed from, had been "once cut over" within the meaning of the language employed in the contract. Under the well established rule that the findings of the chancellor on the facts, where the evidence is taken before a special master, should not be disturbed by an appellate court, unless such findings are clearly shown to have been erroneous, the decree will be affirmed. Powell v. Powell, 77 Fla. 181, 81 South. Rep. 105; Simpson v. First National Bank, 74 Fla. 539, 77 South. Rep. 204; Baggett v. Otis, 65 Fla. 447, 62 South. Rep. 362.

Affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.