RAWLS, Judge.
A deed prepared by appellants[1] conveyed the following described interest in oil and gas royalties to them, viz:
“ . . . Description of property owned by C. E. Hayes, Jay, Florida. Tract No. 1
Begin at a point 910.2 feet North of the SW corner of Lot One (1) of Section Forty (40), (E. H. Holmes Donation); thence South sixty-one degrees and twenty-seven minutes East two hundred ninety-eight (298) feet; thence South twenty-eight degrees and thirty-three minutes West forty four (44) feet; thence East one hundred (100) feet; thence South one hundred fifty-one (151) feet; thence North Eighty-six degrees and twenty-five minutes East three hundred ten (310) feet to West line of old Pollard Road; thence along West boundary line of Pollard Road North thirty-one degrees and twenty-five minutes East Four hundred thirty-five and five tenths (435.5) feet; thence North thirty-four degrees and forty minutes East five fundred [sic] seventy-two (572) feet to cemetery; thence North fifty-three degrees and fifty-five minutes West one hundred seventy-eight (178) feet; thence North nineteen degrees and twenty five minutes East; three hundred thirteen (313) feet; thence South seventy degrees and fifteen minutes East two hundred fifty-one and five tenths (251.5) feet to West line of Pollard Road; thence North twenty-five degrees and forty minutes East six hundred and fifty-two (652) feet; thence North forty-nine degrees and five minutes West four hundred seventy five feet to North line of Lot two (2); thence West one thousand three hundred seventy-seven and three tenths (1,377.3) feet to Northwest corner of Lot One (1); thence South one thousand seven hundred twenty-nine and seven tenths (1,729.7) feet to point of beginning, containing fifty-four and five tenths (54.5) acres, more or less and being in Lots One (1) and Two (2) of Section Forty (40), (E. H. Holmes Donation) Township Five (5) North, Range Twenty-nine (29) West as recorded in Deed Book ‘Q’ page 152 of Santa Rosa County, Florida records.
Less a parcel or tract sold and conveyed unto Mrs. Pansey Owens described as follows to-wit:
Beginning at a point five hundred seventy-six and eight tenths feet (576.8) North of the SW corner of Lot One (1), of Section Forty (40), (E. H. Holmes Donation); thence North eighty-six degrees and twenty-five minutes East Three hundred ninety-nine (399) feet for point of beginning; thence North one hundred thirty-nine (139) feet and corner; thence in a Northwesterly direction a distance of One hundred fifty-two (152) feet to the Northeast corner of the O. C. Hawsey tract and corner; thence South twenty-eight degrees and thirty-three minutes West forty-four (44) feet and corner; thence East one hundred (100) feet and corner; thence South one hundred fifty-one (151) feet and corner; thence North eight-six degrees and twenty-five minutes East sixty-one (61) feet back to point of beginning, said deed recorded in Deed Book A-63, at page 68-70.

*953
Tract No. 2

Commencing at a point 100 rods East of the Northeast corner of Section 19, Township 5 North, Range Twenty-nine West; thence up the Milton & Pollard public road in a Northeasterly direction Nine Hundred Ninety Four (994) yards to corner stob on said public road at the NE corner of lot owned by Sarah Aarons and starting point; thence due West Ninety Six (96) yards to Western corner of lot owned by Sarah Aarons and corner, thence in a northwesterly direction One Hundred Seventeen (117) yards and corner, thence along Northerly boundary line of said tract 330 yards and corner, thence down Brewton and Jay public road in a Southwesternly (sic] direction One Hundred Seventy (170) yards and starting point containing 7 acres more or less. ALSO commencing at the Southwest corner of Lot eight (8) of the E. H. Holmes Grant, Township 5 North, Range 29 West; thence due East on Southern boundary line of Lots seven and eight (7 & 8) of said grant Seven Hundred Forty One (741) yards to center of Jay & Pollard public road and corner, thence up said public road one hundred ten (110) yards and corner, thence West parallel with the said Southern boundry [sic] line of lots seven and eight (7 & 8) Seven Hundred fifty (750) yards to Western boundry [sic] line of said lot eight (8) thence South on said boundry [sic] line 110 yards to place of beginning, containing seventeen acres more or less.

Tract No. 3

Beginning at a point five hundred seven-six and eight tenths feet (576.8) North of Southwest corner of Lot one (1) of Section Forty (40) E. H. Holmes Donation, thence North eighty-six degrees and twenty-five minutes, East three hundred ninety-nine feet (399) thence North one hundred thirty-nine feet (139), thence in a Northwesternly [sic] direction a distance of one hundred fifty-two feet (152), to the Northeast corner of the O. C. Hawsey tract and starting point; thence in a Northern direction ninety (90) feet and corner thence in a Westernly [sic] direction three hundred forty-nine (349) feet to East side of Farmer State Market Highway and corner, thence in a South-ernly [sic] direction down East side of said highway Ninety (90) feet and corner, thence in a Easternly [sic] direction along Northern line of O. C. Hawsey tract three hundred (300) feet to place of beginning, containing .67 acres more or less. It is the intention of the Grantor to convey and the Grantee to receive twenty full royalty acres out of the above described property, (emphasis supplied) Sign here for description:
/s/ C. E. Haves
[[Image here]]
The royalty interests and rights herein sold, transferred and conveyed are:
(a) 20/80 of Vsth of the whole of any oil, gas or other minerals, except sulphur, on and under and to be produced from said lands; delivery of said royalties to be made to the purchaser herein in the same manner as is provided for the delivery of royalties by any present or future mineral lease affecting said lands. . . .” (emphasis supplied)
In reviewing the foregoing conflicting paragraphs of the instrument, the trial judge held, as a matter of law, that the latter paragraph prevailed.
As reflected in their depositions, appellants (grantees) are sophisticated dealers in oil and gas mineral rights. Appellant Ma-gruder,[2] an experienced oil attorney, testified that the description “was an ambiguity on the face of it, a small one but still an ambiguity.” If the foregoing descriptions *954 defined an 80-acre parcel, the variance in the language would be of no import. However, if the parcel is less than 80 acres, the “twenty full royalty acres” description would vest unto the grantees a larger percentage of the lease. If the subject description defined a parcel greater than 80 acres and the latter conveyance of ““/so of Vsth” of the whole of any oil produced from said lands was applied, more than “twenty full royalty acres” in the lease would have vested in the grantees. The amount conveyed is patently ambiguous.
Ambiguities in a deed are construed against the party choosing the words. The primary consideration in the construction of a deed is ascertaining the intention of the parties from an examination of the whole instrument.[3] As already observed, the intention of the parties cannot be ascertained from the language chosen by these grantees which states, in effect, if less than 80 acres, we receive more than 20 royalty acres — if more than 80 acres, we receive more than 20 royalty acres. Stated another way, the grantees chose language that is better communicated through the colloquial expression: Heads we win; tails you lose. Therefore, this deed presents a case where the variant descriptions were inserted by the grantees for their benefit, and thus the grantees must suffer the result of having such language construed against them.
AFFIRMED.
McCORD, C. J., concurs.
BOYER, J., dissents.

. Although not named an appellant, the trial court entered a “stipulated order” reciting that Lee McCormick “at all times material to the issues in this case” was the owner of an undivided one-third interest in the subject royalty interest. McCormick, the scrivener of the deed, testified on deposition that he had 30 years experience in the “oil business.”

. Magruder, after graduating from University of Mississippi School of Law, was employed by Carter Oil Company which was merged with Humble Oil Co.; he worked with them as an attorney in Arkansas, Louisiana and Mississippi for four years. In 1961, he opened his private practice and “because of my experience with an oil company my clients immediately became oil clients and, of course, I worked various Alabama, Mississippi and some other areas checking titles and, of course, I purchased interests of my own.”

. West Yellow Pine Co. v. Sinclair, 83 Fla. 119, 90 So. 828 (1922).