474 So.2d 299 (1985)
Robert D. CHILD, Appellant,
v.
Robin J. CHILD, Appellee.
No. 84-2148.
District Court of Appeal of Florida, Third District.
July 16, 1985.
Rehearing Denied September 9, 1985.
Schwartz, Steinhardt, Weiss & Weinstein and Mark Weinstein, North Miami Beach, for appellant.
Norman Malinski, Miami, for appellee.
Before SCHWARTZ, C.J., and DANIEL S. PEARSON and JORGENSON, JJ.
SCHWARTZ, Chief Judge.
Both former spouses appeal from respectively adverse rulings of a trial court order on a master's report concerning various disputes as to the enforcement of their three-year old property settlement agreement. We agree with each of the ex-husband's contentions and with neither of the ex-wife's.

I
1. The primary issue involves the portion of the agreement which stated that the parties would equally divide various securities owned by either or both of them. An attached schedule of their personal property included a paragraph entitled "BONDS" which, in turn, contained the following:

*300 The following bonds are in the names of both husband and wife, to wit:
Ten (10) $10,000.00 par value bonds State of Massachusetts Housing Finance Agency 9.25 coupon due May 15, 2017.
At the foot of the paragraph was the following:
Bond held in escrow at Safra Bank. One-half (1/2) interest to be paid to wife as per schedule on bond. One-half (1/2) market value of bond to be paid on demand to Robin Joy Child after July 1, 1981.
In 1981, Ms. Child indeed received, in supposed compliance with this provision, a single $5,000 Massachusetts Housing Agency bond. The present controversy is simply whether the quoted statement meant ten $10,000 or $100,000, worth of bonds, as the wife successfully contended below with the result, as ordered by the trial court, that her ex-husband owed her $45,000 more; or, as the husband argues, only $10,000 worth. We find that the record conclusively establishes the correctness of Mr. Child's position.
It is first apparent  directly contrary to the trial court's conclusion that the provision unequivocally provided for a distribution of $100,000 of bonds[1]  that the designation is utterly unclear and uncertain on its face as to the value of the bonds which the parties actually owned and meant to divide. Thus, as in the resolution of what we think is the closely analogous issue of the identification of ambiguous references to property disposed of in a will, extrinsic evidence was required to determine just what was held at the time. See Perkins v. O'Donald, 77 Fla. 710, 727, 82 So. 401 (1919); 18 Fla.Jur. 2d Decedents' Property § 355 (1980); Admissibility of Extrinsic Evidence to Identify Stocks, Bonds, and Other Securities Disposed of by Will, 16 A.L.R.3d 432 (1967). In this instance, the entirely uncontradicted evidence before the master was that Mr. and Mrs. Child in fact held $10,000 par value bonds in two $5,000 certificates; that they did not and had never owned $100,000 in bonds; and thus that Ms. Child was entitled only to what she had already received.
Mr. Child, who is a stockbroker specializing in municipal bonds of this kind, unequivocally so testified and produced a broker's confirmation slip reflecting such a purchase. It appears that in the specialized municipal bond market, as reflected by his testimony and a standard industry publication, bond values are universally referred to in $1,000 par value units,[2] no matter what the face value of the particular certificate. (In fact, the Massachusetts Housing Authority has never issued bonds in $10,000 denominations.) This was the reason that, in drawing the list of assets, Child referred, almost as a matter of second nature, to ten thousand dollars of bonds in no less than three different ways ([1] ten [2] (10) [3] $10,000.00). Since Ms. Child professed no knowledge whatever of the couple's actual Massachusetts Housing Authority bond holdings, there was no other side of this factual "controversy." It must therefore be concluded that the husband's position had been established as a matter of law.
The appellee's argument to the contrary is acknowledgedly based entirely upon the language of the document itself, without reference to the clearly established underlying facts. In attempting to justify the result below, she relies entirely upon the famous rule that an ambiguous contract or agreement must be interpreted against its draftsman. 11 Fla.Jur.2d Contracts § 106 (1979). Since it was her ex-husband who compiled the list, she therefore argues that the uncertainty as to the amount of the bonds must result in the *301 acceptance of her version of the meaning of the phrase. Because, as we have noted, the present problem concerns the mere identification of items as otherwise uncertainly described on a particular schedule, rather than the interpretation of an undertaking, we do not believe that canons of contractual construction are, strictly speaking, applicable to this case at all. Even if they are, however, Ms. Child cannot succeed. The "construction-against-the-draftsman" rule, like all such tenets, is designed as a means to reach the end-all of every problem of contractual interpretation: the intent of the parties. When that intent does not clearly appear from the words of the contract itself  that is, when it is deemed "ambiguous", see Bacardi v. Bacardi, 386 So.2d 1201 (Fla. 3d DCA 1980)  the against-the-drafter rule may be of some value[3] if the extrinsic evidence on the ultimate intent issue is itself inconclusive; it may be decisive when, as in the case of contracts of adhesion such as insurance policies, there is no other evidence at all of intent beyond the words themselves. See Firemans Fund Ins. Co. of San Francisco, Cal. v. Boyd, 45 So.2d 499 (Fla. 1950); New York Life Ins. Co. v. Kincaid, 136 Fla. 120, 186 So. 675 (1939). But, just as merely circumstantial evidence must give way in the fact of contrary and conclusive direct evidence as to the ultimate fact, see Alan & Alan, Inc. v. Gulfstream Car Wash, Inc., 385 So.2d 121 (Fla. 3d DCA 1980), the adverse construction principle cannot prevail, and indeed does not even come into play, when, as here, the parties' actual intent has been otherwise conclusively determined. See Walker v. Close, 98 Fla. 1103, 125 So. 521 (1929); L'Engle v. Overstreet, 61 Fla. 653, 55 So. 381 (1911); Brown v. Beckwith, 60 Fla. 310, 53 So. 542 (1910); Dade County v. O.K. Auto Parts of Miami, Inc., 360 So.2d 441 (Fla. 3d DCA 1978), cert. denied, 379 So.2d 207 (Fla. 1979). Thus, in West Yellow Pine Co. v. Sinclair, 83 Fla. 118, 90 So. 828 (1922), the supreme court said:
[C]omplainant invokes the rule that the grantors, having chosen the language employed and being responsible for the alleged uncertainty and ambiguity, must suffer the result of having such language construed against them. This theoretically is a perfectly just rule of construction. It is well established, and this court is in full accord with it. Its soundness is undisputed. Its application to this case may not be conceded, not because the instrument is a deed of indenture  the paragraph under consideration was clearly inserted for the benefit of the grantors  but because there is no necessity for its application. This rule construing deeds most strongly against the grantor is not to be resorted to unless necessary. Where satisfactory results can be reached by other rules of analysis and construction, it may not be invoked. The primary consideration in the construction of a deed is the intention of the parties, and this intention must be gathered from an examination of the whole instrument, which must be so construed as to render all its provisions consistent and harmonious, if this may be done. [e.s.] [citations omitted]
90 So. at 831.
As in Sinclair, the asserted rule of construction may not be applied here. We have already recited the undisputed facts which show that $10,000, not $100,000, in bonds were "intended" to be divided by the parties. The result to this effect is made even more clear if  applying the rule that the parties' own conduct under a contract may provide the best indication of their intent in entering into it, see Monroe County v. New Port Largo, Inc., 467 So.2d 757 (Fla. 3d DCA 1985); Bassett v. Bassett, 464 So.2d 1203 (Fla. 3d DCA 1985)  we add the fact that Ms. Child accepted the $5,000 bond as the correct distribution and, although she did contest several other areas of alleged non-compliance, did not complain for over two years thereafter.
*302 2. There is also merit in the challenge to the award of attorney's fees to the ex-wife. This is so because she failed to make any evidentiary showing whatever as to one of the two indispensable prerequisites for such an order: her inability herself to pay the fees, and thus her "need" for Mr. Child to do so.[4] See Cummings v. Cummings, 330 So.2d 134, 136 (Fla. 1976); Greenberg v. Greenberg, 397 So.2d 1032 (Fla. 3d DCA 1981); Thoni v. Thoni, 179 So.2d 420 (Fla. 3d DCA 1965). Ms. Child's reference to the fact that her financial affidavit was on file is obviously unavailing both because it does not in fact show need and, far more important, because it was not even referred to, much less introduced or otherwise subjected to cross-examination at the hearing.[5]

II
Turning to the ex-wife's points on cross appeal, the first concerns another provision of the agreement which called for Mr. Child to make specified contributions towards her purchase of a used Mercedes Benz. She contended below, however, that, by later agreeing to guarantee her payment for a new Mercedes she wished to purchase, her ex-husband had bound himself, and was "estopped" to contend otherwise, to make the substantially higher payments required. Because these facts do not involve an essential element of any estoppel, a detrimental reliance by the person who seeks to invoke it, see 22 Fla.Jur.2d Estoppel and Waiver §§ 54-56 (1980), we agree entirely with the trial court who, reversing the master, found that there was no estoppel as a matter of law and that Ms. Child had no rights in this respect beyond those in the agreement  which the husband had admittedly fulfilled.
The wife's other claim, for pre-judgment interest on the $45,000 for the bonds, has of course been mooted by our conclusion that the principal amount is not due.
Affirmed in part, reversed in part.
NOTES
[1] The judgment provides:

The Court specifically finds that the plain language of the Property Settlement Agreement dated June 6, 1980 and approved by this Court in its Final Judgment dated June 10, 1980 contemplated a division of Ten (10) Ten Thousand Dollar ($10,000.00) Bonds, i.e., One Hundred Thousand Dollars ($100,000.00) in Bonds.
[2] This is because historically and until very recent years, such bonds were issued only in $1,000 denominations.
[3] Although it often serves only as a makeweight to support an otherwise determined result. See Agricultural Alumni Seed Improvement Ass'n, Inc. v. Diaz, 432 So.2d 788 (Fla. 3d DCA 1983).
[4] Mr. Child's ability to pay is undisputed.
[5] Our reversal of the attorney's fee on this ground renders it unnecessary to reach the husband's substantial contention that the fact that Ms. Child's present attorney had been associated with the lawyer representing the husband when the agreement in issue was drawn rendered him entirely disqualified in this case. See Lackow v. Walter E. Heller & Company Southeast, Inc., 466 So.2d 1120 (Fla. 3d DCA 1985).