SCHWARTZ, Senior Judge,
dissenting.
As the majority points out, the policy requires the insured to give “prompt notice to Citizens or your producer.” Despite Mrs. Siguenza’s repetitive, unqualified deposition testimony that she called Citizens,[3] the majority concludes that a material question of fact exists as to whether she actually notified the agent instead. It relies on the following dialogue during Mrs. Siguenza’s deposition:
Q. Do you recall if you called the actual insurance company or your insurance agent, the person that you obtained insurance from?
A. That’s the insurance company.
Q. Pardon?
A. The insurance company.
Q. You called the insurance company? A. M-hmm.
From this single answer — “[tjhat’s the insurance company” — the majority draws the inference that Mrs. Siguenza may have actually meant that she notified the insurance agent, which if true, would be inconsistent with her other deposition testimony, but consistent with her subsequently filed affidavit,[4] and therefore would not be *1128 prohibited by the Ellison rule,[5] disallowing attempts to create conflicting issues simply to avert summary judgment.
It is clear that when evidence before the court is conflicting or will permit different reasonable inferences, summary judgment is precluded. See Moore v. Morris, 475 So.2d 666 (Fla.1985); Rocamonde v. Marshalls of Ma, Inc., 56 So.3d 863 (Fla. 3d DCA 2011); Murciano v. Garcia, 958 So.2d 423 (Fla. 3d DCA 2007). However, it is also true that a party cannot take inconsistent positions in order to avoid that judgment. See Ellison, 74 So.2d at 681. That is what happened here. First of all, Mrs. Siguenza’s answer, “[tjhat’s the insurance company,” does not conflict with her other deposition testimony in such a way that raises a question of material fact as to this issue. If her answer was enough to be considered incongruent with her other deposition testimony, it would have also been enough, standing alone, to defeat summary judgment. The fact that it was not enough is shown by the Siguenzas’s decision to file an affidavit prior to the summary judgment hearing specifically (and suddenly) swearing that she called the agent, and only the agent. It is no coincidence that the plaintiffs considered the affidavit necessary to avoid summary judgment only after — during the period between the deposition and the summary judgment hearing — it was conclusively demonstrated, through its records and the testimony of its agents, that nobody called Citizens at all. Thus, the Siguenzas could win only if, despite the total lack of corroborating evidence, Mrs. Siguenza actually (twice) called the agent with no response. So that is what she had to say, and therefore, is what she said.
Second, the majority is not justified in drawing the conclusion from the deposition that Mrs. Siguenza may have called the agent in the first place.[6] While every reasonable inference must be drawn in favor of the party against whom summary judgment is sought, the word “reasonable” is the important one. See Moore, 475 So.2d at 668. I disagree with the majority’s drawing of the treasonable inference that Mrs. Siguenza was flummoxed and may have meant to say, on the at-least seven occasions during her deposition that she was asked who she called to report the loss, that she notified the agent. Moreover, even if this inference were reasonably drawn, it was clearly overcome and *1129 refuted by the direct and unequivocal evidence that (as she explicitly stated over and over again) she called Citizens. See Paniello v. Smith, 606 So.2d 626, 627 (Fla. 3d DCA 1992) (quoting Alan & Alan, Inc. v. Gulfstream Car Wash, Inc., 385 So.2d 121 (Fla. 3d DCA 1980) (“It is a well-settled principle that a fact cannot be established by circumstantial evidence which is perfectly consistent with direct, uncon-tradicted, reasonable and unimpeached testimony that the fact does not exist.”)). See also Child v. Child, 474 So.2d 299 (Fla. 3d DCA 1985) (contrary and conclusive direct evidence overcomes circumstantial evidence) rev. denied, 484 So.2d 7 (Fla.1986).
Finally, while Mrs. Siguenza’s deposition testimony may or may not be contradictory itself, it is blatantly contradicted by her subsequently filed affidavit. Where there is no credible explanation for discrepancies between earlier and later inconsistent testimony, the latter may not be considered. See Ellison, 74 So.2d at 681 (Fla.1954); Elison v. Goodman, 395 So.2d 1201 (Fla. 3d DCA 1981); see also Arnold v. Dollar Gen. Carp., 632 So.2d 1144 (Fla. 5th DCA 1994) (a party to a lawsuit will not be allowed to baldy repudiate his or her prior deposition testimony by an affidavit executed by that party or by another person so as to create a jury issue without credible explanation in the affidavit or in the record itself). Mrs. Siguenza did not provide any (let alone credible) explanation as to the discrepancy between her earlier deposition testimony and the subsequently filed affidavit regarding which entity she gave notice to about the loss. Even in Soler v. Secondary Holdings, Inc., 771 So.2d 62 (Fla. 3d DCA 2000), where the plaintiff explained that the discrepancies in his testimony were due to the fact that he was “confused” and/or “intimidated” at his earlier deposition, this court found that the trial court properly disregarded his subsequent testimony on the basis that such assertions were unsupportable.
Thus, the evidence did not raise a viable question of material fact that Mrs. Siguen-za ever called the agent (or anyone) to report the loss. The court’s contrary conclusion represents an endorsement and approval of just the kind of game-playing with the truth the Ellison rule is designed to prevent. I therefore dissent.

. During her May 17, 2010, deposition, Mrs. Siguenza testified:
Q. Who did you call?
A. The insurance. Citizens insurance.
[[Image here]]
Q. Do you recall if you called the actual insurance company or your insurance agent, the person that you obtained insurance from?
A. That’s the insurance company.
Q. Pardon?
A. The insurance company.
Q. You called the insurance company?
A. M-hmm.
[[Image here]]
Q. Had he made those repairs prior to you calling the insurance company, or that you say you called the insurance company?
A. I called them to let my, you know, from after the hurricane, I called Citizens insurance about the leakage and damage of the roof and the crack.
[[Image here]]
Q. And who did you report the claim to?
A. To Citizens insurance.
Q. Are you sure that it was Citizens Property Insurance Company that you called?
A. Yes.
[[Image here]]
A. Did I call the insurance company? I called the insurance company.
Q. You called the insurance company directly?
A. Yeah, because I have the, you know, the policy number and everything.
[[Image here]]
Q. You said, and correct me if I’m wrong, you said that you reported, you called Citizens for the first time—
A. Yeah.
[[Image here]]
Q. How long after Wilma did the ceiling start to leak?
A. How long from after Wilma? From two to four months, because that’s the time I called Citizens.

. In her affidavit, Mrs. Siguenza stated:
8. I personally called the Insurance agent who sold my husband ... and I the subject insurance Policy approximately two (2) to four (4) months following the hurricane to report the damages.
[[Image here]]
10. However, I did not receive a follow up call from the Insurance agent or the Insurance Company....
11. I once again called the Insurance agent approximately one (1) month after the initial phone call. I explained to the insurance agent the extent of the damages to my Property due to the hurricane, as well as that I had previously called to report the damage.
*1128 12. The Insurance agent yet again reassured me that they would get back to me concerning the claim.
13. For the second time though the Insurance agent failed to contact me or my husband ... to follow up....
14. I called the Insurance agent using phone line of the subject Property on both of the aforementioned phone calls.

. See Ellison v. Anderson, 74 So.2d 680 (Fla.1954).

. The contrast between the statement upon which the court relies in the deposition and the affidavit could not be more stark:
Q. Do you recall if you called the actual insurance company or your insurance agent, the person that you obtained insurance from?
A. That's the insurance company.
Q. Pardon?
A. The insurance company.
Q. You called the insurance company?
A. M-hmm.
[[Image here]]
8. I personally called the Insurance agent who sold my husband ... and I the subject insurance Policy approximately two (2) to four (4) months following the hurricane to report the damages.
11. I once again called the Insurance agent approximately one (1) month after the initial phone call. I explained to the insurance agent the extent of the damages to my Property due to the hurricane, as well as that I had previously called to report the damage.