193 So.2d 476 (1967)
Walter L. MEAD, Jr., et al., Appellants,
v.
Georgia Oles MEAD, Also Known As Mrs. Walter L. Mead, Appellee.
No. 65-880.
District Court of Appeal of Florida. Third District.
January 10, 1967.
Sibley, Giblin & Levenson, Miami Beach, Frates, Fay, Floyd & Pearson, Paul & Sams, Miami, for appellants.
Mershon, Sawyer, Johnston, Dunwody & Cole and James E. Glass, Miami, for appellee.
Before HENDRY, C.J., and CARROLL and SWANN, JJ.
PER CURIAM.
The question presented by this appeal boils down to whether there is sufficient ambiguity in an antenuptial agreement to preclude the entry of a summary final decree.
Shortly before Walter L. Mead, now deceased, and his wife-to-be, Georgia Oles Terrell, were to marry in the summer of 1962, they executed an antenuptial agreement. Mead was then a man in his early sixties, who suffered from a heart disease. *477 He was a man of substantial wealth, with children from a previous marriage.
Mead passed away in 1964, and his widow, who was not provided for by will, brought a declaratory action to have her rights determined under the antenuptial agreement. The chancellor found that the scope of the agreement was limited to Mead's real property, which comprised but five per cent of an estate worth in excess of $4,000,000. A summary final decree was entered accordingly, and the executors, children of Mead's previous marriage, and the guardian ad litem for Mead's minor grandchildren, now appeal.
The portions of the antenuptial agreement which have a bearing upon this appeal are the following:
* * * * * *
"Whereas, it is the intention of second party by this indenture,
"1. To waive, relinquish, and bar her dower interest as the wife, or widow, of the first party in and to all of first party's lands, messuages, tenements, and hereditaments, and to empower and authorize the said first party, at any time, during the existence of coverture between the parties, or, at his death, his heirs, executors or administrators, to mortgage, or otherwise encumber, and to sell, assign, grant, or convey, any and all of the said lands, messuages, tenements, and hereditaments, and to make and execute good and sufficient deeds, or other instruments therefor, independently and without the consent or privity of the second party; and
"2. To waive, relinquish, and bar the dower interest of the second party as the wife, or widow, of the first party, in and to all lands, messuages, tenements, and hereditaments that he may hereafter become seized of, or that may be owned by him, at the time of, or after, their marriage, and to authorize the mortgaging, encumbering, or conveyance, thereof, in the same manner as the lands, messuages, tenements and hereditaments now seized by him; and
"3. * * * Now therefore, this indenture witnesseth:
"1. That for and in consideration of the provisions made or to be made for the payment to her out of the income of the property of the first party of the sum of One Thousand ($1,000.00) Dollars per month for and during the term of her natural life commencing upon divorce or separation of the parties or upon the death of first party, and in further consideration of the solemnization of the said proposed marriage between first party and second party, the second party hereby waives, relinquishes, bars, and surrenders, and hereby agrees to, and does, waive, relinquish, bar, and surrender:
"(a) All of her right, title and interest, statutory or otherwise, that shall, or may, be hereafter vested in her, because of her said marriage, as the wife, or widow, of the first party, and consisting of both dower and homestead rights, title and interest, in and to all lands, messuages, tenements, and hereditaments now owned by the said first party, and in and to any and all lands, messuages, tenements, and hereditaments that the first party may hereafter own, acquire, or become seized of;" (Emphasis supplied)
* * * * * *
"4. That for and in consideration of the provisions herein made, the first party does hereby waive, relinquish, and bar any and all right, title, or interest that the first party might have or obtain in the assets of the second party to the same effect that such interests are barred by paragraph 1(a), paragraph 1(b) and paragraph 2 above." (Emphasis supplied)
* * * * * *
This agreement was apparently drawn by Mead himself. In a well reasoned opinion, the chancellor found these provisions to have been clear and unambiguous, leaving *478 no doubt as to the intention of the parties. The summary final decree provided, in part:
* * * * * *
"(2) The antenuptial agreement was intended to and does constitute a waiver, relinquishment and bar of plaintiff's homestead and dower interest solely in and to the real property of which Walter L. Mead, deceased, was seized at the time of his death, and does not in any manner constitute a waiver, relinquishment or bar of plaintiff's dower interest in and to the personal property owned by the decedent at the time of his death." (Emphasis supplied)
* * * * * *
The appellants cite Harrison v. McCourtney[1] for the proposition that this summary decree should not have been entered if there were the slightest doubt concerning the meaning of the antenuptial agreement.
They argue persuasively that the chancellor's construction of the agreement reduces its purpose to a patent absurdity in view of the fact that Mead's statement of assets shows that only 5.2% ($225,000) of his assets were in real property, while the remaining 94.8% of his total assets of $4,356,673 were in personal property, and that Mead could not have intended to secure a release of his real property (5.2%) from any claim of his wife-to-be without also intending to secure the release of the remining 94.8% of the estate.
Pursuasive though this may appear to be, it can carry no weight for purposes of this appeal, because the record discloses that the statement of assets was not filed in this cause until more than ten days after the summary decree was entered. A lack of omniscience being a human frailty, we cannot hold that the able chancellor erred in not considering what was not in evidence at the time of his ruling.
We do, however, find the reference to "lands, messuages, tenements, and hereditaments" as used herein to be susceptible to more than one interpretation. These are ancient and archaic words which, in our opinion, do not have a clear, unambiguous, commonly known meaning to lay persons (or even, perhaps, to all lawyers). There is some authority for the position that the word "hereditaments" comprehends anything capable of being inherited, be it corporeal, incorporeal, real, personal, or mixed. 25 Fla.Jur.Property, § 8; 19 Words and Phrases, "Hereditament", p. 394; 42 Am.Jur. Property, § 17.
At this point, understanding of the agreement is clouded because we are presented with support for two conflicting propositions, namely: (a) the scope of the expression, "lands, tenements, messuages, and hereditaments" is limited to real property exclusively, and (b) the scope of the expression, "lands, tenements, messuages and hereditaments" extends to encompass all forms of personalty as well.
Further ambiguity or doubt is generated by Paragraph 4 of the agreement. Here, Mead purports to waive any interest he might have in the assets of his wife-to-be to the same effect as she had waived her interest in his lands, tenements, etc.
On the one hand, it would appear that this merely says that Mead gives a blanket waiver as to any interests in all of the assets of his wife-to-be. On the other hand, the phrase "to the same effect" would seem to convey the impression that some limitation was placed upon the scope of the future wife's waiver, i.e. that the waiver agreement was not intended to cover all assets of Mead, and therefore a corresponding limitation was placed on Mead's waiver of his interests in the assets of his wife-to-be.
Where the antenuptial agreement is ambiguous or uncertain, the circumstances surrounding the parties at the time of execution and also the object of its execution may be shown. Also, where there is *479 a difference in the recital and the covenant, the covenant will prevail. Northern Trust Co. v. King, 149 Fla. 611, 6 So.2d 539 (1942).
Accordingly, we reverse and remand for a ruling on the ultimate facts and determination of the issues involved herein. We specifically refrain from any holding as to the ultimate interpretation to be placed upon the wording of the agreement, the scope of this decision being limited merely to the holding that there was sufficient ambiguity to preclude a summary final decree.
We reverse and remand for further proceedings consistent herewith.
NOTES
[1] Fla.App. 1962, 148 So.2d 53.