SCHWARTZ, Chief Judge.
This case involves the construction of the release provision of a real estate mortgage. The trial court ruled that the sum required to secure the release of a described portion of the property included the down payment. We reverse.
The objective facts of the matter are undisputed. In 1977, Diaz bought a large tract of land in Dade County from the appellant, Agricultural Alumni Seed Improvement Association, Inc. (AASIA).[1] The total purchase price was $800,000; $150,000 was paid at closing, and the seller took back a $650,000 purchase money mortgage at eight per cent, payable in forty quarterly payments of $23,761.24. The mortgage, which, in common with all the pertinent documents, was drawn by Diaz’s representatives, contained the following clause:
See attached sheet marked “Schedule “A”.[2]
This is a Purchase Money First Mortgage.
The mortgagee herein for itself, its successors and assigns, agrees to release from the lien and operation of this mortgage any of the parcels described on the attached sheet upon the payment to the mortgagee, its successors or assigns, as follows, to-wit;
For Parcel I — $335,000.00, plus accrued interest on the amount then being paid for the release.
For Parcel II — $290,000.00, plus accrued interest on the amount then being paid for the release.
For Parcel III — $175,000.00, plus accrued interest on the amount then being paid for the release.
After Diaz had made some $230,000 in mortgage payments, he demanded the release of Parcel I from the mortgage lien on the ground that, with the inclusion of the $150,000 down payment, the total exceeded the $335,000 provided in the mortgage. In the present action, which Diaz instituted after AASIA rejected this demand, the trial court agreed with his position. Ruling almost wholly upon its interpretation of the documents in question, it granted the plaintiff’s motion for summary judgment, ordering AASIA to release Parcel I. This determination was incorrect.
*790 It surely does not conclusively appear from the release clause itself — as it must to sustain the summary judgment entered below, Holl v. Talcott, 191 So.2d 40 (Fla.1966); Mead v. Mead, 193 So.2d 476 (Fla. 3d DCA 1967), cert. denied, 201 So.2d 552 (Fla.1967) — that the down payment should be applied to the release price for Parcel I, or either of the others.[3] Indeed, the face of the instrument indicates directly to the contrary. There is no reference whatever in the terms of the mortgage, which is an entirely separate, legally independent instrument, compare 11 Fla.Jur.2d Contracts § 123 (1979) (“Matters annexed or referred to in contract”), to anything but the $650,000 note it secured. Much less is there any indication that the $150,000 down payment, which had already changed hands and which, of course, did not affect the debt itself, was to be employed as a means of reducing the security held by the mortgagee for the payment of that debt. That such a provision — for example, “For Parcel I — $335,000, including the down payment” or “For Parcel I — $185,000, plus the down payment”[4] — could easily have been inserted but was not is extremely telling against Diaz’s present position, particularly since the mortgage must be read against him, as the party who drafted it. American Agronomics Corp. v. Ross, 309 So.2d 582 (Fla. 3d DCA 1975), cert. denied, 321 So.2d 558 (Fla.1975). When, even regardless of this factor, a release provision does not explicitly allow for a credit for the down payment, none will be permitted. Baldwin v. Benedict, 111 Iowa 741, 82 N.W. 956 (1900). In fact, we have neither been referred to nor found any decision which, like the judgment below, has held that a payment not made pursuant to the precise terms of the release clause should be given such an effect. Cases collected, Annot., Construction of Provision in Real-Estate Mortgage, Land Contract, or Other Security Instrument for Release of Separate Parcels of Land as Payments are Made, 41 A.L.R.3d 7, 134-47 (1972); see Stephens v. Keen, 68 Fla. 558, 67 So. 226 (1915).
The primary argument advanced by Diaz lies in the fact that the total amount for the three releases is $800,000 which, he says, must include the $150,000 down payment. We cannot agree with this contention. We reiterate[5] that — unlike many such provisions — the one before us does not involve mandatory seriatim releases of designated portions of the mortgaged premises tied to specific proportional payments on the mortgage with the end result that the entire property becomes free of the lien when the last payment is made; Diaz’s claim might be well-taken if that were true. In contrast, however, the instant clause provides that the mortgagor may choose which of the parcels he wishes to have free of the mortgage, upon the condition only that he pay the designated amount upon the mortgage itself. In this situation, it is surely not unreasonable; indeed, we are told by the appellant,[6] it is commonplace business practice for a “premium,” in the sense of a total payment in excess of the mortgage debt, to be required for releases of portions of the property from the lien. By doing so, the mortgagee, who is of course not obliged to give releases at all, at the same time (a) maintains an increased margin of security in the form of land which remains subject to the mortgage; see Baldwin v. Benedict, supra, (b) dis courages the mortgagor from selecting the choicest portion of the land for initial release and then walking away from the rest of the deal; and (c) encourages *791 him to pay off the entire mortgage by providing that the last release can be secured for a relatively modest amount at the end of the mortgage schedule.[7] What may have been the merely coincidental fact that the total “premium” was equal to the down payment cannot prevail, surely not as a matter of law, over these practical considerations or the precise terms of the release clause in question.
For these reasons, the judgment is reversed, and the cause remanded for further proceedings consistent herewith.
Reversed.

. This entity is an organization of alumni of Purdue University.

. Schedule A contains the legal descriptions of Parcels I, II, and III.

. As is emphasized below, the mortgagor has the choice of designating which parcels are to be released and in what order.

. Or “Parcel II — $290,000 [including the down payment]” or “Parcel III — $175,000 [including the down payment].” The alternative “or” is significant, because, as has been and will be noted, see note 3, supra, the three release clauses are not interdependent and the $150,-000 could therefore be applied only to one. That the parties did not state which one is thus a strong indication that such a credit was not intended to apply to any of them.

. Notes 3 and 4, supra.

. And an “expert” in real estate financing who filed an affidavit in opposition to the motion for summary judgment below.

. Thus, in this case, Parcel III, with a “release price” of $175,000, might be released for only $25,000 in remaining payments plus interest, if Parcels I and II had already been released for $625,000.